Frank Fahrforth, Jr., by Frank Fahrforth, Sr., etc., Plaintiff and Counter-Defendant, Appellees, v. Leo Kwiatkowski, Defendant and Counter-Plaintiff, Appellant.

Gen. No. 50,762.

First District, Third Division.

January 19, 1967.

Morton H. Meyer, Michael A. Gerrard and Edward Zahour, of Chicago (Morton H. Meyer, Michael A. Gerrard and Allen S. Gerrard, of counsel), for appellant.

Alan E. Morrill and Robert A. Sprecher, of Chicago (Morrill & Koutsky, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This involves an automobile accident which occurred on June 5, 1957, on the Southwest Highway in Chicago Ridge, Illinois. Both plaintiff's and defendant's cars were travelling in a northeasterly direction. The only occurrence witnesses were the defendant and the plaintiff's decedent, who died subsequent to the accident from unrelated causes. Because of plaintiff's decedent's death the defendant was not permitted to testify to facts concerning the occurrence. The case was presented on circumstantial evidence and the inferences to be drawn therefrom.

The defendant filed a counterclaim against the plaintiff. The case was tried before a jury and the jury found in favor of the plaintiff, and assessed damages in the sum of $8,100, and also found against the counter-

plaintiff and in favor of the counterdefendant. Judgment was thereafter entered on the verdict.

It is the theory of the defendant that when circumstantial evidence is equally susceptible of opposite inferences, one consistent with liability and one inconsistent, neither conclusion is proved and the plaintiff, who had the burden of proof on this issue, has not sustained it and a verdict in his favor must be set aside.

The defendant's second contention is that although he introduced into evidence motion pictures which were projected and exhibited to the jury, the court refused to permit the films and projector to be taken into the jury room, and this constituted error.

Steven Horvath testified that he was a police officer for the Village of Chicago Ridge at the time of the accident and that he arrived at the scene in a police car at 12:45 a. m. on June 5, 1957. The pavement was dry and the debris from the accident indicated that the impact between the two cars took place on the far left of the lefthand lane, meaning the lane that proceeds in a northeasterly direction. Horvath testified that the debris was collected in the left side or the inside lane. The skid marks of the defendant's vehicle measured 130 feet prior to the impact. Both vehicles had been travelling in a northeasterly direction. After the impact the defendant's vehicle travelled 52 feet, crossing the two lanes of southwesterly traffic and hitting the opposite side of the bridge. The plaintiff's car travelled 20 feet after the impact, struck and went through the guardrail protecting the northeasterly lanes and rolled over for 85 feet. The plaintiff's car tore out 20 feet of guardrail and the defendant's car tore out 10 feet of guardrail. Horvath also testified that the plaintiff's car after striking the guardrail continued on and that he could not say at what distance from that point it was that the automobile tipped over again and rolled over. He didn't remember if he found the car on its side or roof.

302

Stanley Wing, also a police officer of the Chicago Ridge Police Department, testified that he participated in the investigation of this accident. His testimony was substantially the same as that of Horvath.

Cushman Jordan, Jr. testified on behalf of plaintiff that he had ridden with Frank Fahrforth, Jr., and in his opinion he was a very careful driver. He also stated that the Fahrforth car was in good operating condition in June, 1957.

John F. Peicle, one witness called by the defendant, testified that there was damage to the left rear side of the Mercury (plaintiff's car) and that the only damage to the Plymouth (defendant's car) was to the front.

■ It was argued first that the circumstantial evidence introduced by the plaintiff was just as consistent with liability as with nonliability and therefore plaintiff failed to sustain his burden of proof. It is true that the happening of an accident, of itself, does not raise any presumption of negligence on the part of the defendant. Rotche v. Buick Motor Co., 358 Ill 507, 193 NE 529.

It is argued by the defendant that the testimony of the police officers showed that both the plaintiff and the defendant were travelling in the same direction and that the impact took place in the lefthand northeast bound lane of the Southwest Highway; that although there were 130 feet of skid marks made by defendant's car prior to its impact with plaintiff's car, and although the damage to plaintiff's vehicle was on the left rear side, and although after the impact the plaintiff's car travelled 20 feet, tore out 20 feet of guardrail and continued to roll over for an additional 85 feet, that one reasonable explanation for the accident cannot be inferred from the evidence. The gist of this argument is that the testimony of damage to the plaintiff's car relates to the left rear side, and the defendant argues that the plaintiff must have been crossing over from the outside to the inside lane of north bound travel in order for plaintiff's

303

car to have been struck on the left rear side. Plaintiff's Exhibit 4 shows the rear end and a portion of the left side of plaintiff's automobile. The trunk is partially open and indents appear to the left of center on the rear of the trunk cover. The side of the left rear fender bulges out over the left rear wheel, from which the inference could be drawn that the rear bumper of the plaintiff's car had been pushed into the left rear fender, causing it to bulge out and away from the car. In addition, the rear end of the left rear fender, which extends above the taillight, is shown to have been pushed in from the rear. The defendant in support of his contention cites Coulson v. Discerns, 329 Ill App 28, 66 NE2d 728, and Pure Torpedo Corp. v. Nation, 327 Ill App 28, 63 NE2d 600. In Pure Torpedo Corp., supra, the court at page 39 said:

> "A fact cannot reasonably be inferred from evidence when the existence of another fact inconsistent with the first can be from the same evidence inferred with equal certainty. A fact cannot be said to be established by circumstantial evidence unless the facts relied on are of such a nature and are so related to each other that it is the only conclusion that can reasonably be drawn from them."

We do not feel that the rule laid down in either Coulson or Pure Torpedo Corp., supra, applies to the instant case. The evidence indicates that the plaintiff was struck from behind after the defendant had applied his brakes and his car had skidded 130 feet before catching and striking the plaintiff's car. There was no evidence offered by either the plaintiff or the defendant to indicate the speed at which the car was travelling which skidded 130 feet. However, such evidence would be of little value in a case such as this, because the impact with plaintiff's car did not even stop the defendant's car, which continued on for 52 feet crossing the two lanes of southeasterly

traffic and tore out 10 feet of guardrail before coming to rest.

In Young v. Patrick, 323 Ill 200, 153 NE 623, a case where there were no eyewitnesses to the accident, the court said on page 203:

"We are of the opinion, also, that the court erred in taking the case from the jury. While there is no testimony of eye-witnesses who could testify as to the speed of the car, there is evidence in the record showing the fact that the car skidded forty feet on the pavement with the wheels locked, and the jury had a right to consider that fact on the issue raised by the charge that the speed of the car was excessive."

The plaintiff argues that the brakes of defendant's car were defective. This argument is based upon the testimony of the police officer, Steven Horvath, who testified in part as follows:

"I also observed the distance that the cars traveled after the impact and also prior to impact. I determined this by measuring from the point of impact back over the visible skid marks and this is some 130 feet of skid marks in which I noted was on the left side only."

The plaintiff construes the testimony "in which I noted was on the left side only," to mean that only the left brake of defendant's car was operating. We cannot say that testimony indicates that only the left brake or brakes were operating and that the officer was not referring to the left side of the northbound traffic lanes. ■ Due care need not be established by direct and positive testimony but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the collision. In Devine v. Delano, 272 Ill 166, 179, 111

NE 742, the court said: "There was no eyewitness to the accident, and hence the question whether deceased was knocked off by the post depends upon the inferences to be drawn from the testimony. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind."

In ILP, Evidence, § 342, the following is stated:

"A greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that is required to establish controverted facts by circumstantial evidence. However, a theory cannot be said to be established by circumstantial evidence unless the facts are of such a nature and so related as to make it the only conclusion that could reasonably be drawn, since it cannot be said that one fact can be inferred, when the existence of another inconsistent fact can be drawn with equal certainty. Where circumstantial evidence is used to establish a material fact, the proof must be based on something more than mere guess, conjecture, or surmise."

■ We do not believe that the circumstantial evidence in this case is equally susceptible of opposite inferences, that is, one consistent with liability and one inconsistent. We believe that the evidence offered in this case is susceptible only of an inference of liability. We hold, therefore, that the plaintiff in the trial court proved his case by a preponderance of the evidence and we cannot say here that the verdict of the jury and the judgment entered thereon is contrary to the manifest weight of the evidence.

The defendant next contends that the court erred in refusing to permit motion picture films of the vehicles of both parties to be sent into the jury room while permitting the still pictures introduced into evidence by

the plaintiff to go to the jury room. The motion pictures were displayed to the jury in the courtroom without any foundation having been laid by the defendant. The plaintiff contends that the motion pictures were shown to the jury in the courtroom over his objection, and that his objection should have been sustained for failure to lay a proper foundation. We think it is unnecessary to discuss here the plaintiff's contention as to the admissibility of the motion pictures in evidence, as we do not feel that the defendant's contention is well taken. The motion pictures which were admitted into evidence consist of a few feet of 8-millimeter film in two pieces. The film was projected onto a screen and the jury was permitted to observe the pictures in the courtroom during the trial.

■ Section 67(4) of the Civil Practice Act (Ill Rev Stats 1965, c 110, par 67(4)), reads as follows:

> "Papers read or received in evidence other than depositions, may be carried from the bar by the jury."

Considerable discretion is given to the trial court as to what exhibits may and may not be taken by the jury into the jury room. In Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635, the court said on page 125:

> "What exhibits may be taken by the jury on retiring to consider their verdict rests largely in the discretion of the trial court."

In Gertz v. Bass, 59 Ill App2d 180, 208 NE2d 113, the court considered the propriety of taking a dictionary into the jury room, and in that case stated that it was reasonable to infer from the fact that the jury specifically requested the dictionary, that they made use of the volume in determining the meaning of the crucial terms and were influenced thereby to the prejudice of the plaintiff.

The defendant cites the case of Grand Lodge A. O. U. W. v. Young, 123 Ill App 628, wherein the trial court refused to permit the jury to take into the jury room a magnifying glass which had been used by the witnesses in examining exhibits. The court there held that the request made by the jury was proper and should have been granted by the court; however, in that case the witnesses had testified to erasures of certain words and figures, and the writing over such erasures in different ink from that used in the body of the receipts and that the outline of portions of certain words and figures so erased, not visible to the naked eye, was discernible with the aid of a magnifying glass. We can readily distinguish the Grand Lodge case from the case before us. The jury had the benefit of seeing the motion pictures in this case while in the magnifying glass case the jury would have been unable with the naked eye to determine whether the testimony of the witnesses, who testified to erasures and the writing over in different ink, was accurate, nor could they weigh the evidence of the witnesses in arriving at a conclusion without the use of the magnifying glass. The jury in that case had not examined the documents with a magnifying glass during the trial as had the witnesses. However, in the case before us the jury had the benefit of the motion pictures shown on a screen before it during the trial. We do not believe, as defendant argues, that he was deprived of a crucial part of his defense by the court's denial or refusal to permit the motion picture projector, which was not offered nor admitted into evidence, together with the film which was admitted in evidence, to be taken to the jury room. It is argued by the defendant that the still pictures offered by the plaintiff and admitted in evidence were contradicted by the motion pictures, but there is nothing before us to show this. As mentioned before, the motion picture film consists of a few feet of 8-millimeter film which is broken and is in two parts.

We are in no position to view this film as this court does not possess an 8-millimeter projector. The fact, however, remains that the jury, who did have the benefit of the film shown on a screen, concluded that it did not help the defendant factually.

■ We are of the opinion that the refusal by the court to permit the jury to take with it to the jury room the motion picture film, which had been displayed to it during the trial, was not an abuse of discretion. For the foregoing reasons the judgment of the court is affirmed.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.