**Harold R. Lambdin, as Executor of the Estate of Ethel Lambdin, Plaintiff-Appellee, v. Arthur Walter, Defendant-Appellant.**

**Gen. No. 10,893.**

Fourth District.

January 22, 1968.

Stifler and Snyder, of Danville (Thomas C. Stifler, of counsel), for appellant.

Summers, Watson & Kimpel, of Champaign, for appellee.

TRAPP, J.

In this action for wrongful death, the defendant appeals from a judgment in the sum of $20,000, entered upon a jury verdict. The trial court denied defendant's post-trial motion in the alternative for a new trial, or for a remittitur upon the verdict. No issues are raised upon the pleadings or the instructions given in the trial court.

Issues argued on appeal are, (1) whether plaintiff met the burden of proof that defendant was negligent, (2) whether the plaintiff met the burden of proof upon the issue of decedent's due care, (3) whether the verdict in the sum of $20,000 was the result of passion and prejudice upon the part of the jury, and (4) whether such sum is excessive in view of the damages proven.

The collision at issue occurred in the forenoon of September 30, 1965, in the City of Urbana upon a highway designated as a part of Route 130, and also known as

the Philo Road. Decedent, aged 73 years, was driving her Buick automobile with her daughter-in-law riding in the front seat, and her granddaughter riding in the rear seat. Defendant, aged 66, was driving in a southerly direction.

The evidence does not disclose the width of the travelled portion of the highway, but it is described as an asphalt pavement with shoulders composed of rock and dirt. The area closely adjacent to the point of the accident is built-up with residences, and the record discloses that approximately a quarter of a mile south of the point of collision, there is a public school of the City of Urbana, and roadside commercial establishments.

Philo Road proceeds in a north and south direction, but curves to the west. Upon this date there had been drizzling rain, and it is stated that there had been rain for two days preceding September 30th. The evidence discloses that at the curve there was mud or dirt upon the highway. In the record there is reference to construction work with an inference that mud was carried upon the highway. At another point, there is a suggestion that the mud had been washed across the highway. The curve was banked, but the degree thereof is not established.

The evidence discloses that decedent was driving in a northerly direction and was entirely upon her own travel lane. The only evidence of the speed of her vehicle is that it was travelling slowly. Decedent's car was described as being clear off of the highway and on the shoulder of the northbound lane after the collision, while defendant's automobile had spun and was partly across both lanes, apparently with its front facing northeast. The course of defendant's vehicle as it travelled south is established essentially by the testimony of an Urbana police officer concerning his observations made at the scene of the accident within a short time after the collision.

The officer testified as to certain tire or skid marks from defendant's car which extended from a point one and one-half feet in decedent's traffic lane northward for a distance of 82 feet. The officer described such skid marks as being in virtually a straight line, as distinguished from marks suggesting the turning of defendant's car to make the curve in Philo Road. The officer testified that from the northerly point where the tire marks were first observed, the vehicle travelled 50 feet upon the mud-free asphalt, and the tire marks continued 32 feet through the mud-covered asphalt, which was encompassed within the curve. The officer did, on cross-examination, describe the asphalt road as slick and the curve as slippery.

The police officer characterized the impact as a "terrific concussion" and stated that the undercarriages of both cars were damaged, as well as the wheels, so that they gouged areas in the northbound lane of asphalt. A photograph in evidence suggests that decedent's automobile was struck behind the left front wheel and ahead of the driver's side, and was badly bent and crushed inward.

Defendant, examined under section 60, answered "yes" to a question of whether or not he suddenly put on his brakes as he approached the curve. In testifying in his case in chief, he describes his driving as:

> ". . . I turned east and I saw another car facing me and I tried to brake immediately, but the road was a lot slippery (sic) and just kept right on going and wouldn't turn so I hit the other car."

Defendant testified that he had been driving some 100 miles to and through Urbana under conditions of drizzling rain.

As to the issue of decedent's freedom from contributory negligence, the record is uncontradicted that

she was entirely within or upon her own travel lane and travelling at a reasonable rate of speed. We find nothing to suggest any conduct by decedent which could be considered contributory negligence and, in fact, defendant points out no evidence suggesting decedent's negligence. The testimony of decedent's daughter-in-law is corroborated by the testimony concerning the vehicle marks observed by the police officer.

Upon the issue of the sufficiency of the proof that defendant's negligence was the proximate cause of the collision, it is strenuously argued that the fact that the defendant:

". . . skidded across the center of the road is not tantamount to proving that person was negligent."

Upon analysis this does not appear to be a precise description of the movement of defendant's car. From the evidence it is a reasonable inference that defendant drove his automobile so that it "skidded" in essentially a straight line for nearly 80 feet, where it crossed the center of the highway as it curved, and that as it went something over a foot and one-half across the center it struck decedent's vehicle. There is no evidence of skidding in the sense of a lateral movement across as is found in many reported opinions.

██ ██ It is urged that we hold, as a matter of law, that defendant was not guilty of negligence because he says that he did not expect the wet asphalt to be slippery, and that he was not able to control his car. This we cannot do. Our courts have said, over a period of many years, that a person whose automobile is on the wrong side of the highway and out of control has a duty to explain such conduct as arising from other than his own negligence. Sughero v. Jewel Tea Co., Inc., 66 Ill App2d 353, 214 NE2d 512; Tomlinson v. Chapman, 24 Ill App2d 192, 164 NE2d 240; Murphy v. Kumler, 344 Ill App 287, 100

NE2d 660 and Calvetti v. Seipp, 37 Ill2d 596, 227 NE2d 758. In the latter case it was held that the presence ·of ice on the pavement is not such an explanation. We cannot say that wet asphalt is so different from ice as to change the rule. In Sughero and in Chapman the court held that it was not error to direct a verdict upon the issue of liability in favor of the plaintiff.

It is noted briefly that upon this record a wet asphalt pavement does not necessarily account for the collision. There is nothing in the record to suggest a reason why defendant suddenly applied his brakes while some 50 feet from the curve. Considering the evidence as to the physical conditions, defendant's testimony that decedent's automobile suddenly appeared in front of him in a position requiring a sudden braking, does not necessarily convince. While it is argued, defendant does not, in fact, say that he was going 25 miles per hour when he applied his brakes—rather, he states that he had been going 25 miles an hour apparently while in the City of Urbana, and that he had no reason to increase his speed. The evidence shows that the automobiles met violently after defendant's skidding approach. There is nothing in the testimony suggesting a reason why the skid continued in a straight line for some 80 feet, rather than following the course of the curve after release of the brake.

In rebuttal, defendant argues that this case is controlled by the opinions in Illinois Power Co. v. Abernethy, 60 Ill App2d 214, 207 NE2d 708; Ferdinand v. Lindgren, 32 Ill App2d 133, 177 NE2d 10 and Bradley v. Madden Co., 333 Ill App 153, 76 NE2d 797. In these cases, the jury returned verdicts in favor of the defendant. The reviewing courts stated that it would not be held, as a matter of law, that the respective defendants were negligent. Such opinions cannot be transmogrified into authority requiring us to conclude that under these facts defendant, as a matter of law, was not guilty of negligence. As in those cases, the issues here were for jury determination.

■ Defendant argues that the facts in evidence disclose a sudden emergency so that the defendant was excused from exercising the degree of care which would be required under normal conditions. Such issue does not appear in the post-trial motion and nothing in the record suggests that this issue was presented to the trial court. In Rzeszewski v. Barth, 324 Ill App 345, 58 NE2d 269, cited by the defendant, the record showed that the conditions creating the emergency arose from the conduct of persons other than the defendant. There is no such evidence here. See also Palmer v. Poynter, 24 Ill App2d 68, 163 NE2d 851.

There has been extended argument as to whether or not there is a presumption of pecuniary loss sustained by the adult son of the decedent. Such issue does not appear in this record. There is nothing to show that this presumption was presented to the jury by means of an instruction, but if it was, the briefs and arguments concede that no objection to such instruction was made. There is no claim of a refusal of any relevant instruction tendered by the defendant upon the point. Again, this issue does not appear to have been presented to the trial court in the post-trial motion. There was, in fact, evidence supporting a claim of pecuniary loss in the sense of benefits and services to the surviving son. While decedent was 73 years of age, she had made her own living until the age of 71 years, when her enterprise was sold out. Thereafter she continued to live a busy life and was described as in good health. She had supplied substantial amounts of capital for her son's retail pet shop, and in addition to maintaining her own household, apparently worked in the shop regularly, not only performing routine detail, but in dealing with customers, thus permitting the son to be out on other business. There is evidence that she had devised a novelty item and made it for sale, both at retail and in the son's shop, and for sale by other retailers. There is

evidence that decedent was generous with her time in caring for the son's children to the degree that the son's wife had been regularly employed. It was stipulated that her life expectancy was 12½ years.

 The evidence supports the conclusion that decedent's son was receiving benefits of pecuniary value in terms of aid and services. While these were not established upon a cost accounting basis, it does not appear that such requirement has ever been called for by our courts. The pecuniary addition to her estate that decedent would have made but for her death is not the sole basis for determining the pecuniary damage suffered by the next of kin. Barrow v. Lence, 17 Ill App2d 527, 151 NE2d 120.

 Courts of Review agree that the award of damages to next of kin under the Injuries Act is not a subject of mathematical formula, but is a matter for jury determination. Such determination will be sustained upon review unless the record discloses that the jury's award was reached because of passion or prejudice, or through having heard and considered improper elements of damage. The record here discloses nothing of a prejudicial character in this trial. Illinois Power Co. v. Abernethy, 60 Ill App2d 214, 207 NE2d 708. In argument defendant concludes that the verdict was the result of passion and prejudice because of its amount. The award fixed by the jury was reviewed by the trial court upon the post-trial motion. This court cannot say, as a matter of law, that the judgment award is so unreasonable that it must be concluded that the jury acted from passion and prejudice.

The judgment of the trial court is affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.