JENNIE ROSEMARY FANCIL, as Adm'r of the Estate of Jack Fancil, Deceased, *et al.*, Plaintiffs-Appellants, *v.* Q.S.E. FOODS, INC., d/b/a BIG JOHN's # 3, Defendant-Appellee.

(No. 73-280; )

Fifth District—April 17, 1974.

*Rehearing denied May 28, 1974.*

Harlan Heller, of Mattoon, and Robert L. Douglas, of Robinson, for appellants.

Edward Benecki, of Gosnell, Benecki & Borden, Ltd., of Lawrenceville, for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiffs appeal from a judgment of the Circuit Court of Crawford County entered in favor of defendant and against plaintiffs after the dismissal of plaintiffs' complaint on defendant's motion.

Defendant was the owner and operator of a grocery store in Oblong, Illinois, at which plaintiff's intestate, Jack Fancil, a member of the Oblong city police force, was killed by a burglar on the night of June 1, 1970.

Plaintiff's complaint alleged that there had been several burglaries at the defendant's store prior to the night in question and that the de-

fendant knew of them; that decedent and other members of the Oblong police force inspected defendant's premises each night for the purpose of protecting defendant's property and that defendant knew of these inspections; that defendant had added a wire enclosure at the rear of the building for storing merchandise; that with knowledge of prior burglaries the defendant disconnected a vapor light that had been used to light the enclosure; that the enclosure was therefore dark; that defendant knew that danger to decedent and other officers was enhanced because of the unlighted entrance; that defendant

"(a) Negligently and carelessly failed and omitted to provide a suitable and adequate light in the area of the enclosure added to the Defendant's premises when it knew that the premises had been the subject of burglaries.

(b) Negligently and carelessly disconnected the power to the light erected near the enclosure when it knew or in the exercise of ordinary care should have known that the safety of invitees was thereby imperiled.

(c) Negligently and carelessly disconnected the power to the light erected near the enclosure when it knew, or in the exercise of ordinary care should have known that its action would thereby provide an area of darkness in which burglars could conceal themselves from the view of officers of the law.

(d) Negligently and carelessly failed and omitted to keep the light provided within the interior of the enclosure lighted in the nighttime when it knew or in the exercise of ordinary care should have known that failure to light an area of darkness would be created within which burglars could conceal themselves.

\* \* \*

(16) On June 1, 1970, the Plaint'ff's intestate went to the Defendant's premises for the purposes of performing a security check.

(17) At the said time and place, and as a direct and proximate result of Defendant's negligent and careless acts as aforesaid, burglars concealed themselves upon the premises on the south side of the Defendant's building.

(18) As a direct and proximate result of the negligent and careless acts or omissions of Defendant, Plaintiff's intestate was ambushed and attacked by the burglars while in the process of conducting a security check at the rear of Defendant's premises."

■■ To impose liability for negligence upon a defendant, a plaintiff must show a duty, negligence, foreseeability, and proximate cause. The complaint alleged that the defendant knew of past burglaries, knew that police officers patrolled the building at night, knew that there was no

access to the rear of the building by motor vehicle, and knew that if a mercury vapor light at the rear of the building was unlighted at night, areas of darkness would be created in which burglars could conceal themselves and endanger the safety of patrolling police officers, but nevertheless failed to light or disconnected the power to the light at the rear of the building.

In *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497, our supreme court held that a railroad company owed a duty to a passenger waiting on defendant's platform for a train to protect her from criminal assault by a tramp or hobo. The decision was based on a requirement to exercise "ordinary care" to keep station buildings and appurtenances in a reasonably safe condition for use, coupled with a finding that the risk of assault by loitering tramps or hoboes was within the ambit of that requirement. The court described the duty as requiring defendant to afford protection to passengers from dangers to which it had knowledge or·which, in the exercise of due care and diligence, it could have reasonably anticipated and provided against.

In *Neering* the court said at pages 374-75, 377:

> "Defendant contends that it is not required to guard against injuries resulting from unusual or unexpected occurrences which could not have been reasonably anticipated, while plaintiff declares that she does not contend that defendant was required to guard against injuries resulting from unusual occurrences which could not be reasonably anticipated, but insists that it was a question of fact for the jury to determine whether or not, from all of the evidence, defendant failed to afford her the degree of protection required, from dangers of which it had knowledge, or which, in the exercise of due care and diligence, it could have reasonably anticipated and provided against. Apparently there is not dissent by either party from the above statements of the law.
>
> * * *
>
> It is urged by the defendant that plaintiff had been using the station for a long time and had not been assaulted and that no assault by vagrants had been made on other passengers using the station, therefore the defendant had no knowledge and could not reasonably anticipate that vagrants or any other person would assault plaintiff. Of course, if defendant had known plaintiff would be assaulted, and made no effort for her protection, certainly there would have been a failure on its part to exercise reasonable and ordinary care. The question however, is, from the conditions which defendant permitted to exist around its station, could it

reasonably anticipate that plaintiff might be assaulted and as a consequence observe reasonable precaution to prevent it. It is our judgment the conditions were such that defendant ought reasonably to have anticipated plaintiff might be assaulted and that there is some evidence that reasonable precaution was not taken for her protection."

In *Johnston v. Harris* (1972), 387 Mich. 569, 198 N.W.2d 409, the Supreme Court of Michigan held that a complaint with allegations similar to this one stated a good cause of action. In *Johnston* a tenant was assaulted and robbed by an unknown youth lurking in a poorly lighted, unlocked vestibule in the defendant's apartment building in a high crime area in Detroit inner city. The plaintiff offered proof of the dim lighting and continuously locked outer door of the vestibule, that the area was a high crime area, and sought through the testimony of a public lighting expert to show the relationship between poor lighting and the high incidence of night crime. The trial court directed a verdict for the defendant and the Michigan Court of Appeals affirmed on the ground that there was no adequate proof of proximate cause, but the Supreme Court of Michigan reversed, stating at pages 573-574:

"The Court of Appeals apparently treated the action as solely based on a theory that decedent's failure to provide proper locks and lighting had resulted in plaintiff's injuries. Viewed as such, a fatal logical void existed as to the element of proximate cause. However, to so narrowly view plaintiff's pleadings and proofs is to wholly ignore the interwoven assertion that decedent was negligent in creating a condition conducive to criminal assaults.

The crux of plaintiff's case was that in a high crime district it is reasonably foreseeable that inadequate lighting and unlocked doors would create conditions to which criminals would be attracted to carry out their nefarious deeds. Thus, on a theory not unlike that contemplated by sections 302B, 448 and 449 of 2 Restatement Torts 2d, pp. 88, 480 and 482, plaintiff asserted that decedent's negligence consisted of enhancing the likelihood of exposure to criminal assaults by failing to provide adequate lighting and locks. Plaintiff argued, in effect, that decedent set a trap.

We are of the opinion that 2 Restatement Torts, 2d, § 442B, p. 469, cited by the Court of Appeals, is not applicable to the instant case. Rather, in point are §§ 302B, 448 and 449, *supra*.

Section 302B provides:

'An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to

another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.'

Section 448 provides:

'The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.*' (Emphasis supplied.)

Section 449 provides:

'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.'

The underlying significance of this element of foreseeability, recently discussed by us in *Davis v. Thornton,* 384 Mich. 138, 180 N.W.2d 11 (1970), is apparent in the language of section 448 of the Restatement.

We note that a similar theory has been accepted in a number of quite dissimilar factual settings."

We feel that under the rationale of *Neering, Johnston,* and the pertinent sections of the Restatement of Torts 2d, this complaint stated a good cause of action. Therefore, we reverse the trial court's final order in bar of action and remand for further proceedings.

Reversed and remanded.

EBERSPACHER and CARTER, JJ., concur.