HENRY G. DOOLEY, Adm'r of the Estate of ADELLA L: DOOLEY, Deceased, Plaintiff-Appellee, v. OWEN DARLING, Adm'r of the Estate of PATRICK DARLING, Deceased et al., Defendants-Appellants.

(No. 73-398;

Fifth District—March 17, 1975.

344

Hoagland, Maucker, Bernard & Almeter, of Alton, for appellant Owen Darling.

Burroughs, Simpson & Wilson, of Edwardsville, for appellant Mary L. Gregus.

Schooley and Hartman, of Granite City (William W. Schooley, of counsel), for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from judgments entered on jury verdict in the circuit court of Madison County on a wrongful-death complaint and a cross-claim for wrongful death. Judgment was entered for the plaintiff on the complaint, and for defendant on the cross-claim.

The plaintiff-appellee, Henry G. Dooley, as the administrator of the estate of Adella Dooley, brought an action in the circuit court of

Madison County for the wrongful death of Adella Dooley against defendant-appellant, Owen Darling, as administrator of the estate of Patrick Darling, and against defendant-appellant, Mary Gregus, as administratrix of the estate of Anthony Gregus. Adella Dooley died as a result of an automobile collision between an automobile driven by Patrick Darling, in which she was a passenger, and an automobile driven by Anthony Gregus. Patrick Darling also died as a result of this collision. Subsequently, Anthony Gregus died from causes not related to this collision. Defendant Darling filed a cross-claim against defendant Gregus, as administratrix of the estate of Anthony Gregus, for the wrongful death of Patrick Darling. The jury returned verdicts in favor of plaintiff-appellee and against both defendants in the sum of $35,000 on the complaint and in favor of defendant Gregus on the Darling cross-claim. Judgment was entered on the verdicts by the trial court. This appeal followed the trial court's denial of defendant Darling's and defendant Gregus' motions for judgments *n.o.v.* and motions for a new trial. Both defendants appeal the judgment entered in favor of plaintiff-appellee. Defendant Darling also appeals the judgment entered in favor of defendant Gregus on the cross-claim.

The numerous allegations of error contained in the briefs submitted by the defendants Gregus and Darling raise the following issues: (1) Whether the evidence is sufficient to sustain the verdicts against both defendants and for defendant Gregus on defendant Darling's cross-claim; (2) whether the plaintiff's decedent was guilty of contributory negligence as a matter of law; (3) whether the trial court erred in ruling on certain objections to evidence; (4) whether the jury was properly instructed; and (5) whether the verdict was excessive. Before addressing these issues it is necessary to review the evidence presented in the trial court.

We shall begin with the undisputed evidence. On October 10, 1969, around 1:45 A.M., a two-car collision occurred at, or in the close proximity to, the intersection of Route 203 and Central Avenue in Madison County. Adella Dooley and Patrick Darling, both 21 years old, occupied a 1966 Volkswagen, which was owned by Dooley's father, although apparently driven on this occasion by Patrick Darling. The other car, a 1969 Oldsmobile, was driven by Anthony Gregus, a young man about the same age. Adella Dooley and Patrick Darling died as a result of the collision. Although Gregus survived the collision, he later died of causes unrelated to the crash. There were no other persons involved in, or known eyewitnesses to, the collision.

Route 203 runs north and south. Central Avenue approaches Route 203 from the east, forming a T-intersection. At this location Route 203

is an 18-foot-wide two-lane highway and Central Avenue, also a two-lane highway, is 24 feet wide. This intersection is not within corporate limits of any municipality.

State Trooper James Ezell, witness for the plaintiff, arrived at the scene of the crash shortly after it happened. He testified that he found Darling on the driver's side of the Volkswagen and Dooley on the passenger's side. Both appeared to be already dead. Trooper Ezell also found Anthony Gregus at the scene of the collision. Gregus was injured and incoherent. After taking measurements at the scene, Trooper Ezell determined that the Volkswagen was 162 feet from the north edge of Central Avenue and 4 feet east of the edge of the pavement on Route 203. The Volkswagen faced west. The Gregus Oldsmobile was found 27 feet south of the Volkswagen, partially on the roadway of Route 203, facing south. Trooper Ezell located debris in the northbound lane of Route 203, just north of Central Avenue. When questioned how far north of Central Avenue the debris was found, Trooper Ezell stated on direct examination that the debris was 15 to 20 feet north of the intersection of Central Avenue; but later on cross-examination, he testified that the debris was no more than 10 to 15 feet north of an imaginary centerline for Central Avenue, and could even be less than 10 or 15 feet from the center of Central Avenue, in view of the fact that he did not measure this distance. Gouge marks were found in the northbound lane of Central, north of the debris. The officer found no evidence of black skid marks (other than the gouge marks) in either the north or southbound lanes of Route 203. Trooper Ezell opined that prior to the collision, the Volkswagen was traveling south and at the time of impact was attempting to turn left onto Central Avenue. He further stated that the Oldsmobile was going north and that the crash occurred in the northbound lane of Route 203 at the location of the debris or slightly south of it. Ezell testified that photographs of the scene and the vehicles accurately portrayed conditions existing at the time he investigated the accident. Photographs of the vehicles indicated damage to the front of the Gregus Oldsmobile and to the right side of the Volkswagen. Trooper Ezell explained that the speed limit on Route 203 in this vicinity was 35 miles per hour, and that the area was residential or commercial in nature. He acknowledged that there were no restrictions or prohibitions against left-hand turns onto Central Avenue for traffic headed south on Route 203. The area near the intersection was not illuminated by street lights. The pavement on Route 203 in that vicinity was rough and uneven.

State Trooper Ezell was unable to state whether the Gregus vehicle had its headlights on at the time of the collision, or whether the Gregus vehicle was visible to the other vehicle immediately prior to the crash.

His only testimony in this regard was that when he observed the Gregus car, the headlights were damaged. Ezell did not observe any marks on the roof of either automobile. He testified that the wheels of both cars were damaged to the extent that "it wouldn't appear likely" that either car was in a condition to roll on its wheels to the position where it was found.

Following the collision, Edward Warner, ambulance driver and deputy coroner, took Anthony Gregus to the hospital. While in the emergency room, Warner, acting as deputy coroner, took an oral statement from Gregus. After being placed under oath and after being orally advised that he had the right to counsel, Gregus, the driver of the Oldsmobile, stated he was going about 50 miles per hour at the time of the collision. Both defendants objected to the statement; the trial court admonished the jury that the statement was admissible only against defendant Gregus. Over objection of defendant Darling but with the express approval of plaintiff Dooley, defendant Gregus elicited the remainder of the statement on cross-examination. Included therein were the following statements:

"A. I saw another car, small, coming towards me and pulled in front of me in my lane.
Q. Was [sic] your headlights on?
A. Yes.
Q. Was [sic] the other car's headlights on?
A. Yes.
Q. What was the condition of the pavement?
A. It was dry."

Henry Dooley, father of Adella, testified that he visited the scene of the accident approximately 8 hours after its occurrence. By the time he arrived the Oldsmobile had been removed. He observed fresh skid marks "which appeared to have been caused by metal scraping the roadway." The skid marks were located in the northbound lane of Route 203. Dooley also identified pictures depicting damage to the Volkswagen, over the objection of defendant Gregus only, and testified regarding his deceased daughter's careful habits. Dooley stated that when he had ridden with his daughter, she drove in accordance with the speed limits and with other traffic laws. Without objection by either defendant, he testified that his daughter had taken driver's training in high school; that she was a very intelligent girl who had maintained a 4.91 average on a 5.0 scale and had frequently made the dean's list; and that she was a normal, healthy girl who helped her mother with housework, performing this work safely.

Over objection of defendant Gregus only, Delores Dooley, mother of

plaintiff's decedent, testified that her daughter had driven an automobile since she was 16 years old and that Adella was a "real fine and cautious" driver.

As to pecuniary loss, plaintiff produced testimony that Adella Dooley was 21 years old and in good health at the time of the accident. She paid for the gas used in the Volkswagen, although the car was titled in her father's name. He paid for major repairs. At the time of the crash, Adella was a senior at Southern Illinois University at Edwardsville. making excellent grades. Plaintiff's decedent, Adella, worked part-time and earned $25 to $40 a week. Regarding past earnings, she made $606.12 in 1966; approximately $1,100 in 1967; and $1,145.74 in 1969 until the time of her death. At the time of the collision, Adella no longer resided with her parents. Her mother and father both testified, however, that she frequently came home and helped her mother with chores around the house.

At the close of plaintiff's case, defendant Darling moved for a directed verdict on the ground that there was no evidence in the record of negligence on the part of Patrick Darling. The motion was denied. The trial court, however, allowed defendant Darling's motion for a directed verdict on the count based on wilful and wanton misconduct. The trial court also denied defendant Gregus' motion for a directed verdict.

Defendant Darling produced Willard A. Alroth, a consulting traffic engineer, who had reviewed the evidentiary facts of the accident, including photographs of the scene and the vehicles. In response to a hypothetical question, the expert opined that the speed of the Gregus car at the time of the crash was within a range of 60 to 75 miles per hour and that the Volkswagen was approximately 4 to 10 miles per hour. Based on his calculations, the expert stated that 65 and 6 to 7 miles per hour were the probable speeds of the respective cars. On cross-examination he testified that the minimum reaction time for a human being was seven-tenths of a second. He also stated that a car moving at 7 miles per hour would travel 7 feet in seven-tenths of a second.

Michael John Darling testified that his brother, Patrick Darling, had always been a careful driver, and as a matter of habit, always used his turn signals and always kept a lookout for other traffic. Over objection by attorney for the estate of Patrick Darling, Michael Darling testified that he had assigned any interest he had in the outcome of the lawsuit to his parents.

There was additional testimony by John W. Kalor, Michael Darling's stepfather, and Owen Darling, the deceased's father, regarding Patrick Darling's musical and academic talents and his abilities as an employee.

Defendant Gregus produced several witnesses who testified that

Anthony Gregus had always been a careful driver. His brother, George Gregus, testified that as a habit, Anthony had always used his headlights at night and he always observed the speed limits. Both Jimmy Wayne and Barry Stuart, friends of Anthony Gregus, testified to the same habits. Over objection by Gregus' attorney, George Gregus stated on cross-examination that his brother had been in an earlier accident. Over objection, Barry Stuart further testified that Anthony Gregus usually drove at a speed of 40 to 45 miles per hour on Route 203 in the vicinity of where the collision occurred. Trooper Ezell had testified that the speed limit was posted at 35 miles per hour for cars driven in a northerly direction.

At the conclusion of this evidence, all parties rested. Defendants' Darling and Gregus moved for directed verdicts against plaintiff for failure to establish a prima facie case. Gregus moved for a directed verdict on the cross-claim of Darling. The trial court denied each of the motions.

During final argument, attorney for defendant Gregus stated as follows:

> "The Judge will instruct you before you turn your car you put on your turn signal. The purpose of putting on the turn signal is to alert the other traffic on the road of your intention to turn. It was night. If there had been a turn signal, do you think this accident would have happened?"

Attorney for defendant Darling objected, stating that there was "no evidence one way or the other whether those signals were on." This objection was overruled.

Subsequently the following instruction, tendered by Gregus, was submitted to the jury over defendant Darling's objection.

> "There was in force in the State of Illinois at the time of the occurrence in question, a statute which provided that:
>
> 'A signal of intention to turn right or left when required must be given continuously during not less than the last 100 feet traveled within a business or residential district and such signal must be given continuously during not less than the last 200 feet traveled by the vehicle before turning outside a business district.'
>
> If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorialy negligent before and at the time of the occurrence."

Post-trial motions by defendants Gregus and Darling for judgment *n.o.v.* and for a new trial were denied.

Both defendants contend that the trial court erred in denying their trial motions for directed verdict at the conclusion of plaintiff's evidence and at the close of all the evidence and for judgment notwithstanding the verdict.

■■ As this court stated in *Fancil v. Q.S.E. Foods, Inc.*, 19 Ill.App.3d 414, 415, 311 N.E.2d 745, 746, "To impose liability for negligence upon a defendant, a plaintiff must show a duty, negligence, foreseeability, and proximate cause." Exposure of another to an unreasonable risk of harm is the critical element of negligence. (*Jacobsma v. Goldberg's Fashion Forum*, 14 Ill.App.3d 710, 303 N.E.2d 226.) Our review of the record reveals that the plaintiff presented sufficient circumstantial evidence of the negligence of both defendants to allow the case to be submitted to the jury.

From the record before us the jury could have reasonably concluded that Patrick Darling failed to keep a proper lookout for other motor vehicles on Route 203, that he failed to yield the right of way to the automobile driven by Anthony Gregus or that he attempted a left-hand turn when such could not be completed with reasonable safety. Although there are no eyewitness accounts of the collision, there was evidence from which the jury could have reasonably concluded that Patrick Darling was attempting a left-hand turn and that his view of oncoming traffic was unobstructed. Furthermore, the fact that the accident occurred in the early morning hours of darkness, that the area in the vicinity of the intersection was not illuminated by street lights, that the pavement of Route 203 in the vicinity was rough and uneven, and that at the location of the collision, Route 203 was a narrow two-lane highway, 18 feet in width, were sufficient for the jury to infer from their common experience that the headlights of the automobile driven by Anthony Gregus were operating at the time of the accident. (*Fahrforth v. Kwiatkowski*, 79 Ill.App.2d 300, 224 N.E.2d 641. See also Gard, Illinois Evidence Manual, Rule 79 (1963); 89 C.J.S. *Trials* § 463(b) (1955); Wigmore on Evidence § 2570, at 542-43 (3rd ed. 1940).) This evidence of Patrick Darling's left turn in front of an oncoming vehicle was sufficient for the jury to infer not only the reasonable foreseeability of the approaching vehicle, but also the exposure of plaintiff's decedent to an unreasonable risk of harm and, consequently, the breach of the duty of due care owed to plaintiff's decedent by Patrick Darling. (See *Ficht v. Niedert Motor Services, Inc.*, 34 Ill.App.2d 360, 181 N.E.2d 386.) Hence the trial court did not err in denying *either* of defendant Darling's

motions for a directed verdict or in denying defendant Darling's request for a judgment *n.o.v.*

■■ Defendant Gregus, on the other hand, does not contest the sufficiency of the evidence of negligence on the part of Anthony Gregus; rather, he bases his argument for a directed verdict and a judgment *n.o.v.* on plaintiff's decedent's lack of due care, the proposition that the negligence of Anthony Gregus was not the proximate cause of plaintiff's decedent's demise, and an alleged agency relationship between plaintiff's decedent and Patrick Darling.

We find defendant Gregus' claim that the "owner-passenger" status of plaintiff's decedent gave rise to an agency relationship requiring plaintiff to establish that no agency existed without merit. As the court stated in *Babington v. Bogdanovic,* 7 Ill.App.3d 593, 598, 288 N.E.2d 40, 43:

> "Historically, the doctrine of imputed negligence has been repudiated by most courts in this country, except in limited classes of cases, one being the 'joint enterprise' situation. The Illinois Supreme Court said in *Summers v. Summers,* 40 Ill.2d 338, 239 N.E.2d 795, 799, '* * * the negligence of a driver is not imputed to an owner-passenger in the absence of the relationship of *respondeat superior* or the existence of a joint enterprise.' And it has been held that before negligence can be imputed there must exist between the parties 'some relation of master or superior and servant or subordinate or other relationship akin thereto.' (*Johnson v. Turner,* 319 Ill.App. 265, 49 N.E.2d 297, 304.) Yet others inject the requirements of 'common financial interest indicating a *quasi* partnership entailing the usual joint control.' *Fisher v. Johnson,* 238 Ill.App. 25, 31."

In view of the foregoing authority and in accordance with our supreme court's decision in *Summers v. Summers,* 40 Ill.2d 338, 239 N.E.2d 795, and the Second District Appellate Court's decision in *Scott v. Valentine,* 132 Ill.App.2d 101, 268 N.E.2d 485, we are not inclined to impose upon the plaintiff the burden of establishing that no agency relationship existed in the absence of proof that plaintiff's decedent was in a *respondeat superior* relationship to Patrick Darling or that she and he were engaged in a joint enterprise.

■■■ There is nothing in the record from which it can be reasonably inferred that plaintiff's decedent was negligent in allowing Patrick Darling to drive the Volkswagen, nor that she was negligent in failing to warn the driver of an obvious danger which the driver might not have seen. While the plaintiff had the burden of establishing plaintiff's decedent's freedom from contributory negligence (*Storm v. Brown,* 15 Ill.App.3d 29, 303 N.E.2d 815), the issue of contributory negligence and lack of due

care are ordinarily questions for the trier of fact (*Hardware State Bank v. Cotner*, 55 Ill.2d 240, 302 N.E.2d 257; *Testa v. Kaluzny Bros., Inc.*, 23 Ill.App.3d 841, 320 N.E.2d 114), which become questions of law only if all the evidence, when viewed in its aspects most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary finding based on the evidence received thus far could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504; *Belleville National Savings Bank v. General Motors Corp.*, 20 Ill.App.3d 707, 313 N.E.2d 631; *Iaculla v. Village of Stickney*, 17 Ill.App.3d 324, 307 N.E.2d 629.

In the instant case, both parents testified not only to the careful driving habits of plaintiff's decedent but also to her industry and care in performing housework, her intelligence and her scholastic performance. Defendant Gregus claim that such testimony was inadmissible since it violates the dead man statute (Ill. Rev. Stat. 1971, ch. 51, par. 2), and is irrelevant. We do not agree.

■■■ Notwithstanding the dead man statute, testimony of interested parties is admissible provided it is neither of such a nature as could have been refuted by the decedents of defendants, nor directly related to the accident. (*Foster v. Englewood Hospital Association*, 19 Ill.App.3d 1055, 313 N.E.2d 255; *Martin v. Miles*, 41 Ill.App.2d 208, 190 N.E.2d 473.) It is not contended that this habit testimony could have been refuted by Anthony Gregus, nor was it directly related to the accident, nevertheless it was relevant. (See *Hardware State Bank v. Cotner*, 55 Ill.2d 240, 245, 302 N.E.2d 257.) In an action for wrongful death, testimony regarding the decedent's general reputation as a person of careful habits, as tending to show exercise of due care on the occasion of the fatal accident, is admissible provided there is no direct evidence or eyewitness. (*Plank v. Holman*, 46 Ill.2d 465, 264 N.E.2d 12; *Perzovsky v. Chicago Transit Authority*, 23 Ill.App.3d 896, 320 N.E.2d 433.) Thus, where, as in the instant case, evidence of plaintiff's decedent's due care is not susceptible to direct proof, a presumption of due care arises from proof of her careful habits (*Hardware State Bank v. Cotner*, 55 Ill.2d 240, 302 N.E.2d 257; *Lobravico v. Checker Taxi Co., Inc.*, 84 Ill.App.2d 20, 228 N.E.2d 196) and from consideration of her natural instinct of self-preservation, which prompts one to avoid injury or risk of death (*Milton v. Britton*, 19 Ill.App.3d 922, 312 N.E.2d 303). We believe these presumptions were sufficient to make a *prima facie* case with respect to plaintiff's decedent's due care and freedom from contributory negligence. Therefore, the burden of going forward with the evidence shifted to the defendants. In view of the defendants' failure to proffer sufficient evidence to rebut these presumptions, we cannot say that the trial court erred in denying defendants' motions for a directed verdict or for judgments *n.o.v.* insofar

as such motions were based upon plaintiff decedent's lack of due care or upon her contributory negligence.

■■ Defendant Gregus' final argument for a directed verdict was based upon the proposition that there was no evidence that the negligence on the part of Anthony Gregus was the proximate cause of the occurrence. It is, however, well established that where the concurrent negligence of two parties causes injury which would have been avoided but for the negligence of either, the negligence of each is the proximate cause of the injury. (*E.g., Watson v. Chicago Transit Authority,* 12 Ill.App.3d 684, 299 N.E.2d 58; *Naslund v. Watts,* 80 Ill.App.2d 464, 224 N.E.2d 474.) Equally well established is that proximate causation is ordinarily a question of fact for the jury to be determined from consideration of all the attending facts and circumstances. (*E.g., Ray v. Cock Robin, Inc.,* 57 Ill.2d 19, 310 N.E.2d 9; *Juliano v. Oravec,* 53 Ill.2d 566, 293 N.E.2d 897.) In the instant case, the question of whether the Volkswagen would have been able to safely make a left turn into Central Avenue had the Gregus' car been traveling within the posted speed limit was peculiarly suited for jury determination.

Having thus decided that the trial court did not err in denying either defendants' motions for a directed verdict or for judgments *n.o.v.,* we consider the defendant's contentions that the trial court erred in its admission of certain evidence and in its instructions to the jury. We will not reiterate our earlier discussion concerning the admission of habit testimony offered by parents of plaintiff's decedent wherein we determined that such was properly admitted.

Defendant Darling contends that the trial court erred in its admission into evidence of the statement made by Anthony Gregus to the deputy coroner. While we believe that the trial court erred in allowing defendant Gregus to introduce the remainder of this statement, we believe that its admission, if error as to Darling's case, constituted harmless error. Prior to its admission the trial court admonished the jury that this statement was admissible only to the plaintiff Dooley and not with respect to defendant Darling. The jury was further admonished in an instruction to disregard this statement with respect to defendant Darling. The most prejudicial aspect of this statement was Anthony Gregus' statement that he was driving with his headlights on. As previously noted, the jury could have reached the same conclusion from reasonable inferences and the presumption that Gregus was acting in a manner consistent with self-preservation.

Consequently, we are of the opinion that the admitted statement was not of such a character, when considered with all of the circumstances surrounding its admission, as to sufficiently prejudice defendant Darling

and to suggest that had it been excluded the jury would have probably reached a different verdict.

■■ Defendant Darling also maintains that the trial court improperly gave the jury an instruction concerning the statutory requirement that a driver signal his intention to turn before attempting to navigate a right or left hand turn. The main thrust of this argument is that there was no evidence whatsoever whether Patrick Darling did or did not have his signal on at the time of the collision. While we agree that there is no direct evidence that Patrick Darling violated this statutory requirement, our review of the entire record reveals sufficient evidence to warrant the giving of this instruction. First, it is undisputed that Patrick Darling was in the process of attempting a left turn at the time of the collision. And secondly, from the fact that there were no skid marks in the northbound lane, the jurors could infer that Anthony Gregus was not alerted as to Darling's impending turn. Had Gregus been adequately alerted, he might have been able to apply his brakes and avoid colliding with the Volkswagen driven by Darling. The jury had the right to be instructed on the turn-signal requirement and to consider whether the facts before it made it more probably true than not that Patrick Darling failed to comply with said requirement. The jury could, of course, have concluded that Patrick Darling had complied with the turn signal requirement and yet still have reached the same verdict. It was possible for the jury to reasonably conclude that Darling signaled but negligently failed to yield the right of way. We also note that while defendant Darling did object to this instruction, his general objection did not specify that it was prejudicial to him with respect to plaintiff's case. Nor did defendant Darling request an instruction cautioning the jury to disregard the instruction with respect to the plaintiff's case against him. Consequently, defendant Darling failed to preserve this objection for review. Supreme Court Rule 239(b), Ill. Rev. Stat. 1971, ch. 110A, par. 239(b); see *Barrett v. Fritz*, 42 Ill.2d 529, 248 N.E.2d 111; *Havlovic v. Scilingo*, 7 Ill.App.3d 918, 289 N.E.2d 79.

■■ Defendant Gregus contends that the trial court erred in admitting the testimony of defendant Darling's reconstruction witness. Defendant Gregus bases this contention upon two grounds: (1) that there was eyewitness testimony of the Gregus' car which was admitted into evidence; and (2) such testimony was premised upon assumptions not in evidence. Apparently, defendant Gregus believes this testimony adversely affected his defense against the plaintiff since he, obviously, did not appeal the verdict in his favor on the defendant Darling's cross-claim. We find no merit in the argument advanced by defendant Gregus in support of these allegations. In the instant proceedings, all eyewitnesses died before the

final trial. Anthony Gregus' statement that he was driving at 50 miles per hour at the time of the collision was not admitted against defendant Darling, and, hence, there was no eyewitness testimony with respect to defendant Darling's cross-claim. Admission of the testimony of the reconstruction expert was a matter lying within the discretion of the court, and we perceive no abuse of that discretion in this instance. If defendant Gregus desired any further limitations placed upon such testimony, he should have requested such in the trial court. Having not requested such limitations, he will not be heard to complain at this point in the proceedings. We also note that the errors complained of concerning unwarranted assumptions were either supported by the evidence or in defendant Gregus' favor and, consequently, cannot be said to have constituted reversible error.

Defendant Gregus also contends that the trial court erred in giving plaintiff's instruction No. 12 without, at least, qualifying said instruction with his instructions No. 2, No. 3, No. 4, No. 5, or No. 6. Plaintiff's instruction No. 12 provided:

> "If you find that there was negligence on the part of the driver of the vehicle in which plaintiff was riding, then the driver's negligence cannot be charged to the plaintiff. The care required of the plaintiff in this case is that which a reasonably careful person riding as a passenger would use under similar circumstances."

This instruction is IPI No. 72.03. While we agree with defendant Gregus that it may have been desirable and appropriate to temper this instruction in view of the plaintiff's *de facto* ownership powers over the use of the automobile, none of the refused instructions tendered by defendant Gregus would have adequately performed this function. We note that while the commentary to IPI No. 72.03 stated a "difficult problem is presented where the owner is a passenger," it does not preclude the use of IPI No. 72.03 in owner-passenger cases. We further note that defendant Gregus' instruction No. 10, which was given, did tend to mitigate the deficiency inherent in plaintiff's instruction No. 12. Defendant Gregus' instruction No. 10 provided that,

> "It was the duty of Adella Dooley and Patrick Darling before and at the time of the occurrence, to use ordinary care for their own safety. That means it was the duty of Adella Dooley and Patrick Darling to be free from contributory negligence."

In view of this instruction, which was given, the failure of defendant Gregus to tender other appropriate instruction which could have been given to further mitigate the alleged deficiency of plaintiff's instruction No. 12, we find that the giving of plaintiff's instruction No. 12 was, at best, harmless error.

■■ Next, defendant Gregus contends that the trial court erred in refusing to give his instruction No. 1, No. 7, and No. 8. Defendant's Gregus' instruction No. 1 was based upon the alleged agency relationship between Adella Dooley and Patrick Darling. Instruction No. 8, apparently based upon section 60(a) of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 157(a)), concerned improper lane usage. Neither instruction No. 1 nor instruction No. 8 had a basis in the evidence presented and, therefore, were properly refused. (*Theesfeld v. Eilers*, 122 Ill.App.2d 97, 258 N.E.2d 39.) Instruction No. 7 evidently combined the language of two separate statutes (Ill. Rev. Stat. 1969, ch. 95½, pars. 162(a), 166). The result was an instruction which reflected the precise language of neither of the respective statutes. Consequently, we find that the trial court correctly refused to give defendant Gregus' instruction No. 7 since it neither clearly nor accurately reflected the law as set forth in statutory provisions upon which it was based.

■■ Defendant Gregus further argues that the trial court improperly gave defendant Darling's instruction No. 2. Defendant Darling's instruction No. 2 concerns the statutory requirement that speed be decreased to avoid colliding with other persons or vehicles. Defendant Gregus objects on the ground that the evidence fails to support this instruction. We do not agree. Defendant Darling's reconstruction expert testified that Anthony Gregus was traveling between 60-75 miles an hour when he struck the Volkswagen. There was also testimony from plaintiff's witnesses to the effect that there were no skid marks indicating that Anthony Gregus attempted to decrease his speed. The combination of this testimony presented an evidentiary foundation upon which to base this instruction.

The final contention, which is raised by both defendants, is that the verdict was excessive. Section 2 of the wrongful-death statute (Ill. Rev. Stat. 1969, ch. 70, par. 2) provides that damages for wrongful death are to be compensatory only, and are to be based upon the pecuniary loss resulting from the death of a spouse or next of kin. If a verdict is the result of prejudice, sympathy, or passion, it should be set aside. *Robinson v. Workman*, 15 Ill.App.2d 25, 145 N.E.2d 265.

■■ In the instant case the jury was accurately instructed on the measure of damages to be employed in a wrongful-death action. The jury had before it sufficient evidence of plaintiff's decedent's education, traits, present earning capacity and present contribution (of services) to her family, to determine plaintiff's decedent's future earning capacity and her inclination to contribute to her parents. While we question the propriety of a $35,000 verdict to the parents of a 21-year-old female college student as being purely compensatory of the pecuniary loss they

have suffered ·as a result of her wrongful death, we realize that the award of· damages in a wrongful-death action is not subject to scientific computation and, consequently, is held to· be a matter for jury determination (*e.g., Lambdin v. Walter*, 91 Ill.App.2d 273, 233 N.E.2d 435). The award in the instant case, although large, is not so unreasonable as· to require the conclusion that the jury acted from passion or prejudice. See *Mattyasovszky v. West Towns Bus Co.*, 21 Ill.App.3d 46, 313 N.E.2d 496;· *Goldstein v. Hertz Corp.*, 16 Ill.App.3d 89, 305 N.E.2d 617; *Maca v. Rock Island-Moline City Lines, Inc.*, 47 Ill.App.2d 31, 197 N.E.2d 463.

While we acknowledge that the verdicts tendered by the jury did not result from a trial free from all error, we believe that the verdicts were reached in a trial free from reversible error. The judgment entered by the circuit court of Madison County is, therefore, affirmed.

Judgment affirmed.

JONES, P. J., and CARTER, J., concur.