**Dorothy Dana Vujovich, Appellee, v. Chicago Transit Authority, Appellant.**

**Gen. No. 46,362.**

First District, Third Division.

May 11, 1955.

Rehearing denied June 8, 1955.

Released for publication June 8, 1955.

Thomas C. Strachan, Jr., James O. Dwight, Michael A. Gerrard, and George C. Bunge, all of Chicago, for appellant; Arthur J. Donovan, of Chicago, of counsel.

Irving Zazove, of Chicago, for appellee; William C. Wines, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendant appeals from a verdict and judgment for $45,000 in favor of plaintiff in this action for personal injuries. Plaintiff was injured in a collision between two elevated trains operated by defendant, while she was riding in one of them as a passenger. Upon the trial of the case defendant withdrew its original answer and substituted by leave of court an answer which admitted its negligence but denied plaintiff sustained the injuries claimed. The only issue before the jury was the extent of the injury caused by the collision.

It appears from the evidence that plaintiff, as a result of the collision, was thrown to the floor of the car in which she was riding; that another passenger was thrown and fell upon her; and that she was struck on the head by an advertising sign.

The questions presented upon this appeal are: (a) whether the verdict is excessive and was induced by claimed prejudicial conduct of counsel for plaintiff; and (b) whether certain evidence admitted over the objection of defendant was incompetent and prejudicial.

██ Over the objection of defendant, six photographs were received in evidence as exhibits 1 to 6 inclusive. Exhibit 2 disclosed the splintered condition of the cars involved in the collision. Exhibit 4 disclosed the condition of the car in which plaintiff was riding after the collision. Exhibits 5 and 6 likewise showed other views of the condition of the cars after the collision. These were competent as evidence of the severity of the impact, which resulted in the splintered condition of the elevated cars portrayed in the exhibits, and had a material bearing upon plaintiff's claim that her injuries could result from such an accident.

Exhibit 1 showed a city fireman assisting a male passenger from the scene of the collision. Exhibit 3 showed three city firemen assisting a woman passenger through the window of one of the cars involved in the accident. Exhibit 1 displayed a pained and frightened condition on the face of the passenger. Exhibit 3 shows a similar appearance with respect to the woman passenger. The condition of the passengers in the two exhibits referred to was not an issue in the case and could not have any material bearing upon the extent of the injuries sustained by plaintiff. The natural tendency of such pictures would be to arouse the sympathies or prejudices of a jury rather than to throw any light on the single issue.

The statement of the rule in 32 Corpus Juris Secundum, p. 612, § 709, and cases cited supporting it, is:

". . . Photographs should be excluded where they are irrelevant or immaterial. They should be excluded where they would confuse or mislead rather than aid the jury, distract the jury's attention from the main issues, or unduly emphasize the claims or the evidence of one of the parties, or where the natural effects of their introduction in evidence would be to arouse the sympathies or prejudices of the jury, rather than to throw any real light on the issues. . . ."

Several witnesses for plaintiff, passengers in the cars involved, testified to their condition of ill-being following the collision. Plaintiff's contention upon this appeal, if followed to its ultimate conclusion, that she is entitled to show the condition of the other passengers involved in the accident as indicating the severity of the collision and tending to support plaintiff's claim that she sustained her alleged injuries, would open the door to proof of the physical condition of each of the other passengers. By the same token, if defendant was allowed to dispute the injuries claimed by the other passengers, it would result in trying collateral issues,

involving other passengers, and virtually trying a number of cases in the instant case. Obviously, such collateral matters are incompetent and should not be permitted in evidence before the jury.

The prejudicial effect of such evidence was further emphasized in the testimony of the witness, Milgram, for plaintiff. She testified, over specific objections made by defendant as to its competency, that there were policemen and firemen and a number of ambulances and taxicabs on the street in readiness for the passengers involved in the collision, and that these passengers were carried and handed over from one fireman to another. This type of testimony can have no relationship to the severity of the impact or the extent of plaintiff's injuries. It was another form of appeal to the sympathies and prejudices of the jury.

It appears that in the direct examination of plaintiff's witness, Margaret Cullenan, she identified exhibits 2, 4, 5 and 6, to which we have already alluded. In the redirect examination of this witness, plaintiff's counsel, exhibiting two daily newspapers which were marked for identification exhibits 7 and 8, inquired of the witness if the pictures appearing in the two newspapers correctly showed the condition of the cars involved in the accident. Vigorous objection was made to the display of the newspapers in the presence of the jury and the questioning of the witness concerning the pictures appearing therein. While these newspapers were not received in evidence, and the pictures in the newspapers were not shown to the jury, the court did permit such display of the newspapers and such examination of the witness. She also testified that there were many firemen and policemen around the scene. It is clear to us that the mere exhibition of the newspapers and the examination of the witness in respect thereto permitted an impression for the jury that the accident was of such serious widespread public

119

interest as to warrant the newspapers printing the story and pictures of the accident. The newspapers being incompetent as evidence, plaintiff should not have been permitted to get indirectly before the jury any reference to the fact that such pictures appeared in the newspapers, and the fact that such pictures were like those in evidence as exhibits 1 to 6 inclusive.

In Paliokaitis v. Checker Taxi Co., 324 Ill. App. 21, 26, where certain exhibits were held to be incompetent, this court said:

"The conduct of counsel for plaintiffs in exhibiting them in the presence of the jury was prejudicial to a fair trial for defendants."

To the same effect is Smith v. Johnson, 2 Ill.App.2d 315, 319; Hoskins v. Zimmerman, 334 Ill. App. 395 (Abst.); and Huff v. Cummings, 330 Ill. App. 335 (Abst.).

■ William Cray, plaintiff's witness, office manager of the company where plaintiff was employed after the accident, was permitted to testify, over objection, to the record of her several absences from work, and that plaintiff told him the reason for her absence was that her back was bothering her. The statement by plaintiff was clearly a self-serving declaration, was incompetent as hearsay evidence, and prejudicial. Behles v. Chicago Transit Authority, 346 Ill. App. 220, 229; Novicki v. Department of Finance, 373 Ill. 342, 344.

Dr. Zeitlin, a witness for defendant, who, by his qualifications appearing in the record, is eminent in the field of roentgenology, and whose credibility was not successfully impeached, testified on direct examination from the X-ray films taken of plaintiff at the Edgewater Hospital immediately after the accident. The cross-examination of him by plaintiff's counsel was clearly an effort to discredit him before the jury by asking him if Dr. Greenspahn and Dr. Fanning had not

continuously brought him in to testify in this type of case for defendant on an average of four or five times a week. He also asked him if he had a record of his income showing the money received for appearing as a witness for defendant in the past 10 years. The doctor answered that he had done some work for defendant during the past 10 years, but had in his files about 100 cases in which he appeared against defendant. At that point in his testimony, plaintiff's counsel interjected, not with a question, but with a volunteered statement:

"Mr. Zazove: And maybe 1,000 for them.

"Mr. Gerrard: Now, you are testifying again.

"The Court: Let's stop all of this."

Plaintiff thus undertook to supply facts not based upon any evidence in the record.

In Wellner v. New York Life Ins. Co., 331 Ill. App. 360, 365, we said:

"The defendant is entitled to a fair trial, free from prejudicial conduct of counsel, who in an argument undertakes to supply facts, or an inference favorable to the plaintiff not based upon any evidence in the record." (Citing Appel v. Chicago City Ry. Co., 259 Ill. 561, 569.)

Defendant refers to many instances in the record of the prejudicial conduct of plaintiff's counsel in the presence of the jury. It will suffice to cite some of them. To discuss all of them would unduly extend this opinion. Defendant's counsel, in these instances cited, with propriety made his objections to certain questions asked. Several times before completing the objection he was interrupted by plaintiff's counsel with what we regard as unprovoked prejudicial statements. We find in the record these statements by counsel for plaintiff directed to defendant's counsel:

"You think you got a monopoly on intelligence.

121

"He not only makes an objection, but he makes a misstatement of fact every time he makes an objection.

"What is all this 'four-flushing?'

"That is very unfair, you see, how he makes it difficult, he puts a knife in your back.

"Then why do you open your mouth and raise a lot of fuss about it?

"He makes an objection and it sounds like an elevator is going to climb.

"Judge, I never heard such an asinine objection."

██ ██ We recognize the rule stated by this court in Reinmueller v. Chicago Motor Coach Co., 341 Ill. App. 178, which followed the statement in Walsh v. Chicago Rys. Co., 303 Ill. 339:

" 'This court has said more than once, that in arguing cases to the jury attorneys must be allowed to make reasonable comments upon the evidence. The interest of public justice requires that counsel should not be subjected to unreasonable restrictions in this regard . . . .' "

and added:

"If the rule with reference to improper inferences were applied as strictly as counsel for defendants urge, it would have a tendency to deprive litigants of the right of having their cases argued, for the prudent attorney would in such case forego argument rather than risk reversible error."

It will be observed that the rule stated by the Supreme Court, above quoted, limits such right to "reasonable comments." When, however, the comments are unreasonable and highly prejudicial in character, the rule stated does not apply. We feel that the constitutional right of trial by jury is not a license to counsel to indulge in abusive and prejudicial conduct to gain a verdict, nor does it grant any privilege to embarrass, belittle, and abuse an adversary before a jury to such

an extent that the hope of the adversary to obtain respectful consideration at the hands of the jury is destroyed or seriously jeopardized.

Gordon v. Checker Taxi Co., 334 Ill. App. 313; Wellner v. New York Life Ins. Co., 331 Ill. App. 360; Miller v. Chicago Transit Authority, 3 Ill.App.2d 223; and Keehn v. Braubach, 307 Ill. App. 339, are cases which furnish ample admonition to counsel that a verdict so obtained will not be permitted to stand.

Since there must be another trial of this cause, we shall not discuss the question as to the excessiveness of the verdict.

For the reasons indicated, the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LEWE, J., concurs.

KILEY, P. J., took no part.