Cora Wallinger, Executor of the Estate of Harley H. Wallinger, Sr., Deceased, Plaintiff-Appellant, v. Martin Stamping and Stove Company, a Corporation, Defendant-Appellee.

Gen. No. 67–52.

Third District.

March 28, 1968.

Rehearing denied May 17, 1968.

McConnell, Kennedy, McConnell & Morris, of Peoria, for appellant.

Cassidy, Cassidy, Quinn & Lindholm, of Peoria, for appellee.

STOUDER, J.

Plaintiff-Appellant, Cora Wallinger, as administrator of the estate of Harley Wallinger commenced this action in the Circuit Court of Tazewell County. Count three of the complaint as amended sought damages for the wrongful death of Harley Wallinger resulting from the conduct of Martin Stamping and Stove Company, Defendant-Appellee. At the close of the evidence the court granted Defendant's motion for a directed verdict and subsequently entered judgment against Plaintiff.

On this appeal Plaintiff argues that the court erred in excluding certain photographs and in directing a verdict in favor of Defendant, there being ample evidence in support of Plaintiff's claim to require submission of the issues to the jury.

In December, 1964, Talbott purchased a gas space heater from Manito Hardware Company in Manito, Illinois. He installed the heater in his cabin on Anderson Lake. About a month after the heater had been installed and at the

invitation of Talbott, Harley Wallinger together with four other guests spent the weekend with Talbott at the cabin. When the guests at the cabin failed to return home as expected, an investigation ensued resulting in the discovery of Talbott and his guests dead in the cabin. The deaths were caused by carbon monoxide poisoning while the occupants were sleeping.

As shown by the evidence, subsequent tests of the gas heater revealed it to have been improperly vented, resulting in incomplete exit of the combustion gases through the vent pipe and consequent accumulation of carbon monoxide in the cabin. A short horizontal pipe led from the gas heater to the outside of the cabin and then extended upwards a short distance. The failure of the vertical portion of the vent pipe to extend higher than the peak of the roof caused incomplete exit of the combustion products.

The amended count of the complaint alleged the conduct of the Defendant to be negligent and careless in four respects. First, that the instructions for installation and venting the heater were erroneous and improper; second, that there was a failure to warn against the consequences of improper venting of the heater; third, that the heater was improperly designed and fourth, the heater lacked proper safety devices.

The evidence that Wallinger's death by carbon monoxide poisoning was caused by improper venting of the gas heater is not contradicted. The heater was being used for the purpose for which it was designed, manufactured and sold and could not be used for such purpose without venting. Included with the heater was a four-page pamphlet of instructions. It is the nature of the heater itself and the instructional pamphlet which are primarily the basis for Appellant's claim.

This case presents certain problems which reflect a transition in the theories and principles of manufacturers'

liability. The second amended complaint in this cause was filed in September, 1964, nearly one year prior to Suvada v. White Motor Company, 32 Ill2d 612, 210 NE2d 182. Paragraph seven of the amended complaint alleges a theory of liability on the part of the defendant manufacturer based on negligent or careless acts or omissions. Thus it can be seen that the full import of the Suvada principles i. e. liability without negligence cannot be applied to the issues raised by the pleadings and it is according to the issues so raised that the sufficiency of the evidence must be considered.

The Suvada case does reflect other principles regarding manufacturers' liability, which, insofar as they relate to the prevailing principles of liability, are applicable in this case. It is recognized that the liability of manufacturers may be based on tort and is not limited to warranties either express or implied. It appears that the rights of an injured party are no longer restricted to products inherently or eminently dangerous nor is the liability of the manufacturer limited solely to a breach of the implied warranty that the product is safe for the use intended. See Biller v. Allis Chalmers Mfg. Co., 34 Ill App2d 47, 180 NE2d 46, which discusses Illinois cases and is illustrative of the difficulty of determining and applying the rules concerning inherently dangerous products. In Pitts v. Basile, 35 Ill2d 49, 219 NE2d 472, the court approved the conclusion of the Appellate Court which found that a toy dart was not inherently dangerous but rather than reversing the decision because of this conclusion the court considered other and broader aspects of a manufacturers' duties such as the failure to warn of the consequence of use and improper packaging. The court concluded that the generalized consequences of the misuse of a toy dart were such as not to impose any duty on the manufacturer with regard thereto and in this connection the court relied

both on the observation that any toy can be misused and that the remote vendor could not have practically affected such result by other conduct. Further the court determined the packaging of the darts could not have been a cause of the injury since the evidence indicated that the purchase was not induced by the packaging. It thus appears from the Pitts case, supra, that the duties of a remote vendor at least in part, may depend upon the application and extension of our customary tort theories where the duty is related to the foreseeability of consequences and the causal relationship between acts and conduct and the result.

　■ ■　In considering the duties of a manufacturer of a vented gas heater, the product manufactured, sold and distributed in the instant case, it may well be that there is no general duty to warn against the risks or hazards of failing to remove the products of combustion from the room or area in which the combustion takes place. In this respect it can be said that the knowledge of such requirement is generally known and no duty to warn against the obvious is required of a manufacturer, particularly since it can been seen that an admonition not to use the heater without removing the products of combustion would not materially add to the information possessed by the purchaser or affect any consequent failure so to do. However to say that the purchaser is generally aware of the necessity of removing products of combustion is not to say that the purchaser may be expected to know the proper or safe method of so doing. Where the manufacturer undertakes to instruct in the proper use of the product it can be inferred that such instruction is intended to have some effect upon the purchaser which effect or consequence should be foreseen by the manufacturer. Where the instruction on use is not adequate or accurate the failure of the manufacturer may be negli-

gence. Hartman v. National Heater Co., 240 Minn 264, 60 NW2d 804, 810 (1953).

■ The rule with respect to the direction of a verdict as announced in Pedrick v. Peoria & E. Ry. Co., 37 Ill2d 494, 229 NE2d 504, is that a verdict should be directed where the evidence when considered in its aspect most favorable to the opposite party so overwhelmingly favors the movant that no contrary verdict could be permitted to stand. The evidence is largely undisputed and the resolution of the controversy depends upon the inferences which may be reasonably drawn from such undisputed evidence. We believe that the inferences which may be reasonably drawn from the evidence are substantially conflicting and if resolved in favor of the plaintiff would be sufficient to support a verdict of the jury in favor of plaintiff.

Central to the dispute is the four-page pamphlet admittedly supplied with the heater, there being no other evidence from which it can be inferred that the heater was defective, was negligently designed or negligently lacked safety devices. The pamphlet is entitled "Instructions, Operating and Installation, Martin Vented Gas Heater—General Information." The pamphlet includes such statements as, "To conform to local codes this heater should be installed by a licensed gas appliance installer and inspected by the local gas inspector or utility inspector"; "This heater must be connected to a flue"; "Warning: It is recommended that gas heating equipment not be operated in an absolutely air-tight room unless some provision is made to provide air for combustion"; "Do Be sure flue is drawing"; "Don't be satisfied with an inferior job of installation"; and "It is desirable to have a qualified serviceman install your heater. Remember that the Martin heater is designed and built for maximum satisfaction and safety, but that it has to be properly installed." The pamphlet also includes a cutaway drawing of the heater showing an attached vent

pipe which according to plaintiff extends upward about the same distance as the one installed in the instant case and which according to defendant did not purport to deal with height of the vent pipe.

The dealer who sold the heater to Talbott testified concerning conversations which took place at the time the heater was sold. Another witness testified concerning a part of the conversation and also that he had helped Talbott install the heater relying upon the instructions included.

■ According to defendant the cause of death was the improper installation of the vent pipe which cause was unrelated to any conduct on its part and it contends that the only reasonable inferences from the evidence negate any duty, breach thereof or causal relationship to the death which occurred. Defendant contends that the only reasonable inferences which may be drawn from such instructions are that the purchaser was adequately warned of the need of proper installation, that the heater should be installed or inspected by a professional installer. Further it could not be expected to advise or instruct in accord with the myriad of local codes which might be applicable and that additional warnings concerning improper installation would not have affected the result. We agree that the evidence supports such inferences but we believe that other conflicting inferences may also be drawn. It can be inferred that the instructions were ambiguous insofar as they indicate the necessity of installation or inspection by professional installers or that the installation should conform to local codes, there being no local codes applicable. The instructions do not include any reference to the proper height of the vent pipe or the consequences of failing to elevate the vent pipe to an appropriate height, i. e. above the peak of the roof, except insofar as the cutaway drawing may be related thereto. Whether the instructions should have in-

cluded such directions or warning presented a question of fact considering the instructions as a whole.

Accordingly we believe the trial court erred in directing a verdict in favor of defendant.

██ ██ Plaintiff also argues the trial court erred in excluding certain photographs. The photographs in question were taken shortly after the bodies were discovered and in depicting the inside of the cabin portrayed the bodies of the decedents as found. If the evidence has a reasonable tendency to prove some material fact in issue, such evidence may properly be admitted, and the question is one properly within the discretion of the trial court. Pitrowski v. New York, C. & St. L. R. Co., 6 Ill App2d 495, 128 NE2d 577. We believe there was no abuse of discretion by the trial court in excluding such photographs. Whatever facts such photographs might tend to prove were not disputed issues. It is undisputed from other evidence that decedent was in the cabin and died of carbon monoxide poisoning while asleep. Furthermore, there is no dispute concerning the cause of the accumulation of carbon monoxide resulting in the death. Under such circumstances we believe the trial court could and did consider that such photographs were not relevant to the issues as developed by the evidence.

For the foregoing reasons the judgment of the Circuit Court of Tazewell County is reversed and remanded with directions that a new trial be granted.

Judgment reversed and remanded with directions.

ALLOY, P. J. and HOFFMAN, J., concur.