JAMES W. RUSHER, Adm'r of the Estate of Donald J. Rusher, Deceased, Plaintiff-Appellee, *v.* STEPHEN R. SMITH *et al.*, Defendants-Appellants.

Fifth District    No. 78-280

Opinion filed March 27, 1979.

G. MORAN, P. J., dissenting.

John E. Gambill, of Rantoul, for appellant Stephen R. Smith.

Elmer Jenkins and William G. Eovaldi, both of Benton, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This action was initiated in the Circuit Court of Franklin County by James W. Rusher as administrator of the estate of Donald J. Rusher, deceased, against Stephen R. Smith, Earl D. Christian and Grace Ham to recover damages for the wrongful death of Donald J. Rusher. The jury returned a verdict against the three defendants in the sum of $39,000 upon which judgment was entered. Only defendant Stephen R. Smith appeals from the judgment in favor of plaintiff.

In the complaint, plaintiff alleges that decedent's parents, James W. Rusher and Ruth E. Rusher, were deprived of the means of support and other valuable services of their son when he was willfully and maliciously shot and killed by defendants, and are therefore entitled to actual and punitive damages. Plaintiff further alleges that the surviving wife, Dianna Rusher, who participated in the acts leading to the death of her husband, is barred from receiving any damages.

Defendant Smith filed a motion to dismiss asserting that there can be no recovery for punitive damages in a wrongful death action and that the complaint failed to contain an allegation that the decedent was free from negligence or exercising due care at the time of his death. The trial court denied the motion to dismiss but struck the allegation of punitive damages from the complaint.

Thereafter, defendant Smith filed a motion for summary judgment which was denied. In arguing this motion, counsel for Smith claimed that the distribution under the Wrongful Death Act was to be made according to the laws of intestate succession; that, therefore, the surviving spouse was the only person entitled to any recovery in this action; and that if she were unable to recover because of her complicity in the death of her husband, then no one was entitled to receive the benefits under the Act.

At trial, Grace Ham, Earl D. Christian and Earl's wife, Lori Vailes Christian, testified that they saw defendant Smith shoot Donald J. Rusher with a shotgun in the churchyard of the Eakin Grove Freewill Baptist Church. Defendant Smith did not testify in his defense.

John Andrews, an investigator for the Franklin County sheriff's department, took various photographs of the deceased at the scene of the shooting. Plaintiff sought to introduce into evidence two of these photographs over the objection of defendant Smith. The trial court sustained the objection to one of the pictures because of its prejudicial content but admitted the other photograph.

During the testimony of Pam Rusher, the decedent's sister, plaintiff introduced into evidence a photograph of the deceased in the living room of his parents' home on Christmas Eve in 1972, which was approximately four years prior to the death of decedent. Defendant Smith's objections to the photograph were overruled.

Various testimony was heard concerning the pecuniary loss of the parents as a result of the death of their son who died at the age of 21. After completing approximately one year of high school, decedent worked three months for a drive-in restaurant doing menial tasks. Of the $25-a-week salary, only four to five dollars were given to the parents. Decedent then joined the Army in September of 1972, but was discharged in January of 1974 with a less than honorable discharge. After he left the service, decedent went to work for approximately three months training bird dogs in Canada. When he returned, he gave his father $30. Thereafter, decedent worked about a month helping to tear down the old Benton High School.

In 1974, he married Dianna Brown, but only lived with her for 1½ years. After the separation in December of 1975, he returned to the home of his parents. Shortly thereafter, decedent volunteered to go to the Chester Mental Health Institute for drug rehabilitation and stayed there until August of 1976. He then continued to live with his parents until his death in November of 1976.

During the periods that decedent lived at home since 1972, he helped in the remodeling of the house, did various household chores, and worked in the yard. His health appeared to be good except during the time of his marriage.

In 1975 and 1976, decedent had numerous experiences with the law. He pleaded guilty to a burglary one month prior to his death and had been charged on various occasions with drug violations. At the time of his death, he was on probation for the commission of the burglary.

Overall, decedent spent 90% of his income on himself. He only contributed a maximum of $50 to $60 a year to his parents.

At the instruction conference, defendant Smith objected to plaintiff's Instruction No. 10 which contained the statutory definition of murder:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual, or knows that such acts will cause death to that individual; or,

(2) He knows that such acts create strong probability of death or great bodily harm to that individual; or,

(3) He is attempting to commit a forcible felony other than voluntary manslaughter.'

If you decide that the defendants, either jointly or severally, violated the statute on the occasion in question, then you must consider that fact together with all the other facts and circumstances in evidence in determining whether or not the defendants either jointly or severally, are guilty of wilfully and maliciously, with force and arms, with a shotgun shooting Donald J. Rusher in the face, instantly causing his death."

Defendant Smith claimed that this was an inappropriate instruction to give in a civil case.

■■ On appeal, defendant Smith first argues that the complaint is defective because Illinois law requires a plaintiff to allege due care and freedom from contributory negligence in a wrongful death action. Defendant fails to distinguish between a wrongful death suit based on simple or an aggravated form of negligence and one based on the intentional tort of battery. Although in a negligence action a plaintiff must plead and prove his exercise of due care, in an action founded on an intentional tort, freedom from contributory negligence is not a defense. As stated by Professor Prosser:

"The ordinary contributory negligence of the plaintiff is to be set over against the ordinary negligence of the defendant, to bar the action. But where the defendant's conduct is actually intended to inflict harm upon the plaintiff, there is a difference, not merely in degree but in the kind of fault; and the defense never has been extended to such intentional torts. Thus it is no defense to assault and battery." Prosser, Torts §65, at 426 (4th ed. 1971).

■■■ Defendant Smith next asserts that the parents cannot recover for the wrongful death of their son because the surviving spouse is the only person entitled to maintain such an action by reason of the rules of

descent and distribution. We first note that the law requiring the distribution of a judgment for wrongful death to follow the statute of descent was modified over 20 years ago (Ill. Rev. Stat. 1957, ch. 70, par. 2). The statute now provides that any recovery for wrongful death is to be distributed based upon the actual dependency of "the surviving spouse *and* next of kin of such deceased person in the proportion, as determined by the court * * *." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 70, par. 2.) (*In re Estate of Griffy*, 64 Ill. App. 3d 504, 381 N.E.2d 755 (5th Dist. 1978); *Rust v. Holland*, 15 Ill. App. 2d 369, 146 N.E.2d 82 (2d Dist. 1957).) The statutory language is clear that parents, as next of kin (see *Jung v. Buelens*, 77 Ill. App. 2d 391, 222 N.E.2d 707 (2d Dist. 1966)), and a surviving spouse can recover in the same wrongful death action to the extent of their dependency on the deceased. Consequently, when the surviving spouse is precluded from joining in the recovery by virtue of her participation in the commission of the intentional tort, the parents are entitled to be the sole beneficiaries.

■■ At trial, defendant Smith called a witness, Donald Ross Jones, who testified that Grace Ham had admitted shortly after the incident that she had shot and killed Donald J. Rusher. Defendant Smith argued that this testimony constituted an admission and should be admitted as substantive evidence in Smith's defense. The trial court permitted the statement to be used as impeachment of the testimony of Grace Ham, who denied making this statement, and properly excluded the use of this testimony as substantive evidence. If offered by plaintiff, the statement would be admissible as substantive evidence against Grace Ham as an exception to the hearsay rule; however, as to Smith, a co-defendant, its use was properly limited by the trial court.

■■ ■ Defendant Smith next argues that the two photographs admitted into evidence were prejudicial and inflammatory, and should have been excluded. The general rule is that a photograph is admissible if it has a reasonable tendency to prove a material fact in issue. (*O'Reilly v. Fencel*, 38 Ill. App. 3d 499, 348 N.E.2d 251 (1st Dist. 1976); *Wallinger v. Martin Stamping and Stove Co.*, 93 Ill. App. 2d 437, 236 N.E.2d 755 (3d Dist. 1968).) A photograph should be excluded when it is irrelevant or immaterial, or when its prejudicial nature clearly outweighs its probative value. (See *Vujovich v. Chicago Transit Authority*, 6 Ill. App. 2d 115, 126 N.E.2d 731 (1st Dist. 1955).) In this case, the admission into evidence of the photograph of the deceased in the church yard was proper. As defendant Smith denied in his amended answer that he committed the acts alleged in the complaint, the photograph was admissible to prove a critical element of plaintiff's case. We note, however, that the second photograph, the one taken on Christmas Eve, had little or no probative value. Although it was improperly admitted into evidence, it was not prejudicial to defendant.

■■ Defendant Smith next contends that the damages awarded are excessive. Section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2) provides that damages in a wrongful death action are to be compensatory and based upon the pecuniary loss to the surviving spouse and next of kin of the deceased. (*Dooley v. Darling*, 26 Ill. App. 3d 342, 324 N.E.2d 684 (5th Dist. 1975).) Reviewing courts are generally hesitant to disturb a jury verdict in a wrongful death action unless it is the result of passion or prejudice, or is otherwise palpably erroneous. *Smith v. Jewell*, 41 Ill. App. 3d 754, 354 N.E.2d 471 (3d Dist. 1976).

In the instant case, the jury verdict bears no relation to the pecuniary loss sustained by the parents. The undisputed testimony shows that decedent contributed a maximum of $50 to $60 a year to his parents; that he finished no more than one year in high school; that his only steady employment was his brief stay with the Army; that he had numerous problems with the law; and that he had a serious drug problem. He did participate in the household chores.

■■ Nonetheless the law is well settled that in wrongful death actions, if the next of kin are lineal relations, as here parent and son, a presumption of pecuniary loss obtains which is sufficient to sustain a verdict awarding substantial damages without any proof of actual loss. (*Baird v. Chicago, Burlington, & Quincy R.R. Co.*, 63 Ill. 2d 463, 349 N.E.2d 413 (1976); *Howlett v. Doglio*, 402 Ill. 311, 83 N.E.2d 708 (1949).) While we are not stating that the damages awarded are excessive, the fixing of damages was within the province of the jury. In performing this task, the jury should not be subjected to the influence of improper evidence and improper instructions.

■■ We believe that the jury was prompted by plaintiff's counsel to consider factors other than the pecuniary loss to the parents in arriving at its verdict. For example, in the closing argument, counsel commented on the parents' "loss of society."

> "[T]hey [the parents] don't get anything for his pain and suffering. They don't get anything for his loss of society. They don't get a thing for the loss of that son, his social benefits to them, like, your having your son alongside of you at church, or at some graduation * * *. And the court will instruct you that the grief and sorrow of the next-of-kin, you can't compensate them for that * * * and he will instruct you that you cannot take into consideration the poverty or the wealth of any of these parties."

Defendant Smith objected to these remarks and moved for a mistrial. The court denied the motion, but admonished counsel not to comment on matters not properly before the court. Although counsel told the jury not to consider the parents' loss of society, the undue emphasis placed on this element had the effect of urging the jury to award more than

compensatory damages. It is within the province of the court to instruct the jury as to the applicable law; and it is error for counsel to invade that province for the purpose of pursuading the jury to consider elements of damages which are improper in a wrongful death action.

■■ While this error standing alone might not warrant reversal, a more serious error occurred in the giving of a criminal instruction which contained the statutory definition of murder in a civil action. The tendering of such an instruction can only be an appeal to the jury to award punitive damages. The law is well settled that a party cannot recover punitive damages in a wrongful death action in Illinois. *Mattyasovszky v. West Towns Bus Co.*, 61 Ill. 2d 31, 330 N.E.2d 509 (1975).

We note that the complaint contained a prayer for punitive damages which was struck by the trial court. Plaintiff's use of a murder instruction in an action based on the intentional tort of battery and his use of a closing argument appealing to the sentiments of the jury can only be construed as an effort to persuade the jury to award damages not properly recoverable.

Plaintiff now brings a cross-appeal alleging that we should overrule the law as set forth by our supreme court and award punitive damages in a wrongful death action. The simple response is that once the supreme court has declared the law on a point, it alone can overrule or modify its previous opinion. *Union Starch & Refining Co. v. Department of Labor*, 8 Ill. App. 3d 406, 289 N.E.2d 692 (5th Dist. 1970).

The evidence presented at trial established that defendant Smith shot and killed Donald J. Rusher. Accordingly, the judgment of the Circuit Court of Franklin County is affirmed as to the question of liability but reversed and remanded for a retrial on the issue of damages consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

KUNCE, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, dissenting:

I do not agree that "[t]he law is well settled that a party cannot recover punitive damages in a wrongful death action in Illinois." A careful reading of *Mattyasovszky* and *National Bank of Bloomington v. Norfolk & Western Ry.*, 73 Ill. 2d 160, 383 N.E.2d 919 (1978), and *Churchill v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 127, 383 N.E.2d 929 (1978), convinces me that this statement in the majority opinion is wrong. See also the excellent discussion of this problem in Tort Trends, volume 14, No. 2 (Dec. 1978), published by ISBA.

Nor do I believe any reversible error was committed in the trial court. I would affirm the judgment in actual damages and remand this case for a jury to decide the issue of punitive damages.