No. 2--02--0829 

                                                                  

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

                                                                  

KATHLEEN M. MARTIN, ) Appeal from the Circuit

) Court of Winnebago County.

Plaintiff-Appellant, )

)

v. ) No. 00--L--20

)

JOEL D. SALLY, ) Honorable

) Janet Clark Holmgren,

Defendant-Appellee. ) Judge, Presiding.

                                                                  

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

P
laintiff
, Kathleen M. Martin, filed 
suit against 
defendant
, Joel D. Sally, seeking to recover damages for personal injuries allegedly sustained from a motor vehicle accident.  
Defendant admitted negligence but denied that 
plaintiff
's preexisting injury was aggravated from 
the
 accident and denied that 
plaintiff
 sustained any injuries by 
the
 accident.  After hearing 
the
 evidence, 
the
 jury returned a verdict in favor of 
defendant
.  
We affirm.
 

FACTS

Before trial began, both parties filed motions 
in limine
.  Plaintiff's motion requested that 
the
 trial court bar 
defendant
 from eliciting testimony from his expert engineering witness, Mark Strauss, that no human could be injured in this type of occurrence and that 
plaintiff
 could not have been injured in this occurrence.  The trial court denied her motion.  

Defendant
's
 motion 
in limine
 requested that 
plaintiff
 be barred from presenting evidence that, following 
the
 collision, 
her
 son was crying, was claiming to have been injured in 
the
 accident, was taken by ambulance to 
the
 hospital, or was evaluated and treated.  Plaintiff argued that 
the
 evidence was relevant because 
she
 would be testifying at trial that she was so concerned at 
the
 time of 
the
 accident that her son might be injured due to his recent appendectomy surgery that she focused her attention on her son's condition rather than her own, and she therefore did not complain of any injuries to 
the
 investigating police officer at 
the
 scene of 
the
 accident.  The trial court granted 
defendant
's motion.

Based on 
the
 trial court's ruling that 
defendant
 could present testimony from his engineer that no human body could have been injured in the accident, 
plaintiff
 filed a motion 
in limine
 in which she sought to be allowed to present in rebuttal 
the
 testimony that her son was crying, he claimed to have been injured, he was taken by ambulance to a hospital, and he received treatment at 
the
 hospital for possible injuries.
  The motion was denied. 

The trial court, however, allowed p
laintiff
 to make an offer of proof on 
the
 issues as to why she did not complain of her own injury at 
the
 scene of 
the
 accident and as to whether 
the
 impact was such that a person could have been injured in 
the
 accident.  Plaintiff testified that her 11-year-old son, Cory, was a front seat passenger in 
the
 van at 
the
 time of 
the
 accident.  At 
the
 moment of impact, she witnessed his body move back and forth.  Immediately after 
the
 accident, she had a brief conversation with 
defendant,
 and when 
plaintiff
 finished speaking with him, she noticed Cory crying.  She noticed that Cory's head was down and he was leaning forward.  Cory told her that his back and neck hurt.  P
laintiff
 "freaked out," wondering what to do, because Cory had just undergone an appendectomy weeks before.  Plaintiff then called 911 and an ambulance took Cory to 
the
 hospital.  Cory was evaluated and released that same day.  Cory was "uncomfortable" and took a Tylenol but never required any further medical care. 

The following facts were presented at trial.  On July 10, 1998, 
plaintiff
 was driving a 1990 Dodge Caravan westbound on Halsted Street in Rockford and brought her van to a stop at a red light at the intersection of Huffman Boulevard.  Cory was seated in 
the
 front passenger seat of 
the
 van.  Defendant  was driving a 1988 Chevrolet 1500 pick-up truck westbound on Halsted Street behind 
plaintiff
.  It had been raining and 
the
 pavement was wet.  As 
defendant
 approached 
the
 red light at 
the
 intersection, he saw 
plaintiff
's van in front of him.  He applied 
the
 brakes, but his tires began skidding on 
the
 wet pavement and 
the
 front of his truck struck 
the
 rear of 
plaintiff
's van.   According to 
defendant
, his truck was traveling between five and seven miles per hour when it "squarely" impacted the rear end of 
plaintiff
's van. 

Following 
the
 accident, both 
plaintiff
 and 
defendant
 left their vehicles and looked to see if there was any damage.  Plaintiff's van was equipped with a trailer hitch at 
the
 time.  Both parties agreed that there was no damage done to either vehicle, although 
defendant
 did see a small dimple in his license plate.  Plaintiff admitted that she told 
defendant
 that she was all right and she did not complain of any symptoms at 
the
 time.

Prior to 
the
 accident, 
plaintiff
 twice had injured her back while working, once in 1997 and 
again 
in March 1998.  Plaintiff injured her back on a third occasion in April 1998, while helping her family move.  Following these injuries, 
plaintiff
 was treated by Drs. Robert Porter, Melinda Carter, and Charles Wright.  An MRI of 
plaintiff
's lumbar spine taken on May 6, 1998, showed a disc protrusion at the L4-L5 level.  Because of the back injury in April, 
plaintiff
 had stopped working and she was not working at 
the
 time of 
the
 accident at issue.  Plaintiff had been in physical therapy treatment and taking medication as prescribed by Dr. Wright due to her injury.

P
laintiff
 did not seek any medical attention on 
the
 day of 
the
 accident or within three days following 
the
 accident.  She admitted telling 
the
 therapist on July 13, 1998, that she was feeling gradually improved.  On July 14, 1998, four days after 
the
 accident, 
plaintiff
 attended a physical therapy appointment, which  had been scheduled before 
the
 accident.  She did not see Dr. Wright after 
the
 accident until August 6, 1998, and that appointment also had been scheduled before 
the
 accident.  Plaintiff continued going to her regularly scheduled physical therapy appointments. 

Plaintiff explained that her back and neck were sore from 
the
 accident but because she already was under a doctor's care and already was taking pain medication, she did not go 
to a doctor or hospital for extra care.  
P
laintiff
 noticed that her symptoms were getting progressively worse, more than she had ever experienced.  Immediately before 
the
 accident, 
plaintiff
 had been improving to 
the
 point where she was feeling like returning to work on a part-time basis.  

Dr. Carter, 
plaintiff
's family practitioner, ordered a second MRI of 
the
 lumbar spine, which was taken on July 23, 1998.  When she ordered 
the
 second MRI, Dr. Carter was not aware that 
plaintiff
 had been involved in 
the
 accident on July 10, 1998.  On August 11, 1998, plaintiff's surgeon, Dr. Wright, performed a lumbar discectomy at 
the
 L4-L5 level.  

At trial, Dr. Wright testified for 
plaintiff
 by way of an evidence deposition.  He opined that 
the
 surgery he performed was causally related to 
the
 accident at issue.  On cross-examination, however, Wright conceded that his initial clinical examination of 
plaintiff
 on May 15, 1998, did not correlate with 
the
 MRI of 
the
 lumbar spine that had been done on May 6, 1998, because he expected to see a greater degree of disc protrusion and more nerve root compression to 
the
 left side.  Wright also conceded that any type of heavy physical exertion such as gardening can cause a disc protrusion to progress.

Wright further testified on cross-examination that when he initially gave his opinion that 
the
 accident aggravated 
plaintiff
's injuries, as shown by 
the
 preaccident and postaccident MRIs, 
plaintiff
 had not given him any specific information about 
the
 accident.  He did not know whether it was a front-end or a rear-end collision or 
the
 severity of 
the
 impact between 
the
 two vehicles.  When questioned, Wright admitted that 
the
 greater 
the
 force of trauma, 
the
 greater 
the
 likelihood of having a disc protrusion progress and 
that 
the
 lighter 
the
 impact between 
the
 vehicles, 
the
 less likely it would be for a disc protrusion to progress.  Wright observed that if, in fact, a patient experienced progression of a disc protrusion as a result of a single traumatic event, it is more common than not that 
the
 patient would notice increased symptoms immediately following 
the
 impact or quite shortly thereafter.  After viewing 
the
 photographs of the vehicles, defense counsel asked whether it remained "very possible that [plaintiff's] disk was not injured or aggravated in any way as a result of 
the
 accident at issue?"  Wright responded that, if he was going solely on 
the
 basis of 
the
 presence or absence of damage to 
the
 vehicles, that would be a 
"fair statement," although it ignored certain variables that could magnify or limit 
the
 effect of an impact, and that 
information was unavailable. 

By way of a videotaped evidence deposition,
 defendant called
 Dr. Steven Delheimer.  Delheimer believed that 
plaintiff
 had degenerative disc disease, which can produce herniated discs or disc bulges and which can progress or worsen with age.  In comparing 
the
 preaccident and postaccident MRIs of 
plaintiff
's lumbar spine, Delheimer believed that there was not a significant difference between 
them.
  He believed that 
the
 extruded disc fragment seen by Wright during 
the
 surgery performed on 
plaintiff
 was probably present in May 1998 before 
the
 accident at issue.  He also believed that 
the
 surgery performed on 
plaintiff
 would have become necessary even if 
plaintiff
 had 
not been involved in a motor vehicle accident, because of 
the
 degenerative disc disease and 
the
 fact that 
the
 extruded disc fragment was probably present in May before 
the
 accident.  Delheimer explained that symptoms of pain can "wax and wane on their own," and an example of this was in 
plaintiff
's medical records, which revealed that on July 9, 1998, she reported to her physical therapist that she had increased symptoms of pain and wondered whether they were related to gardening.  Delheimer also remarked that 
plaintiff
 was significantly overweight, which he believed was an ongoing material factor in her complaints of low back pain.

Based upon a review of 
the
 medical records, 
the
 two MRIs, and 
the
 photographs of 
the
 vehicles involved in 
the
 accident, Delheimer concluded that
 
plaintiff's injury was due to an
 extruded disc fragment that was present prior to 
the
 accident.  The symptoms from that disc fragment were waxing and waning, and if she had had surgery at 
the
 time of Wright's initial evaluation, an extruded disc fragment would have been found, even in 
the
 absence of 
the
 accident.  He saw no damage to 
the
 vehicles and found it difficult to believe, based upon common sense, that 
the
 accident was a material factor in 
plaintiff
's need for surgery or her further symptoms. 

Defendant also called Mark Strauss by way of a videotaped evidence deposition.  Strauss is an accident reconstructionist and biomechanicist.  His training and professional experience involved the study of how humans may or may not be injured in different types of vehicular accidents.  Strauss testified that he reviewed 
the
 police report, deposition transcripts, and photographs taken of both vehicles after 
the
 accident.  He also researched measurements of an exemplar Dodge Caravan such as 
the
 one operated by 
plaintiff
, and he testified about studies of whether 
the
 human body could be injured in low-speed, rear-end impacts. 

Strauss was able to determine that 
the
 materials he reviewed supported 
defendant
's estimation that his vehicle was traveling between five and seven miles per hour when it struck 
plaintiff
's vehicle.  He stated there was nothing in 
the
 photographs that would indicate that 
the
 contact between 
the
 two vehicles was anything other than a low-speed impact and that 
the
 "delta V" of 
plaintiff
's vehicle (the maximum speed that 
plaintiff
's vehicle achieved due to 
the
 impact) was approximately three to five miles per hour.  

Strauss further testified as to 
the
 results of studies done in 
the
 field of biomedical engineering, which attempted to determine what injuries would result to humans in low-speed impacts.  He testified that these studies and tests were all subjected to a peer review process, used methodology or techniques firmly established in 
the
 field of biomechanical engineering, and were scientifically performed.  He also testified that 
the
 tests were performed not only by independent researchers, but also by university labs and by 
the
 government to establish 
the
 safety of vehicles.  These tests, which were empirical, showed that in rear-end impacts involving speeds of 10 miles per hour from one vehicle into 
the
 back of another, 
the
 human volunteers showed either no symptoms or only muscle tension or slight damage to 
the
 tissues in 
the
 neck and 
the
 shoulder, and sometimes 
the
 volunteers experienced headaches.  However, Strauss noted that in none of 
the
 human volunteers was there any injury or damage sustained to 
the
 lower back, even in volunteers who had abnormalities of disc degeneration in their lumbar spines according to pretesting MRIs.  Strauss noted that, compared to 
the
 neck area, 
the
 back is a totally different structure, which is stronger than 
the
 neck and is supported by 
the
 vehicle's seat back and 
its
 foam.  Based on his review of 
the
 materials and scientific research, Strauss was of 
the
 opinion that 
the
 impact or contact between 
the
 two vehicles in 
the
 accident at issue was not sufficient to aggravate any condition in 
plaintiff
's back that existed prior to 
the
 accident, including her protruding disc at 
the
 L4-L5 level.

After hearing evidence, 
the
 jury returned a verdict in favor of 
defendant
.  
Following 
the
 denial of her motion for a new trial, 
plaintiff
 timely appeals.  She contends that 
the trial court erred by granting and denying certain motions 
in limine
 because it: (1) allowed 
defendant
's expert witness to testify that 
no human could have been injured 
in 
the
 accident and that 
the
 impact was insufficient to aggravate any preexisting condition in 
plaintiff
's back; and (2) barred 
plaintiff
 from presenting evidence that her son was crying or injured after 
the
 accident to rebut 
defendant
's expert witness's testimony that no human could have been injured and to explain why she did not complain of her own injuries to 
the
 police officer at 
the
 scene of 
the
 accident.

ANALYSIS

At issue are several evidentiary rulings rendered by 
the
 trial court in its consideration of 
the
 motions 
in limine
 brought by 
the
 parties to this appeal.  Motions 
in limine
 are designed to produce a trial without the introduction of prejudicial material.  
Konieczny v. Kamin Builders, Inc.
, 304 Ill. App. 3d 131, 136 (1999).  On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion 
in limine
.  
Green v. Union Pacific R.R. Co.
, 269 Ill. App. 3d 1075, 1082 (1995).  A trial court's decision on a motion 
in limine
 will not be disturbed absent an abuse of discretion.  
Hallowell v. University of Chicago Hospital
, 334 Ill. App. 3d 206, 210 (2002).  In case of trial court error, a reversal is called for only if 
the
 evidence improperly admitted was sufficiently prejudicial to change 
the
 outcome of 
the
 trial.  
Cairns v. Hansen
, 170 
Ill. App. 3d
 505, 511 (1988). 

1.  Testimony of Defendant's Expert Witness

In the first issue on appeal, plaintiff contends that the trial court erred in allowing Strauss to testify that 
the
 impact or contact between 
the
 two vehicles was not sufficient to injure any human or aggravate any condition in 
plaintiff
's back that existed prior to 
the
 accident, including her protruding disc.  Plaintiff asserts that Strauss should not have been allowed to testify on 
the
 subject because his testimony was irrelevant and based on speculation and matters of common knowledge.

Expert testimony is admissible at trial when 
the
 expert has knowledge or experience not common to a layperson and that knowledge or experience would aid 
the
 trier of fact in determining 
the
 facts at issue.  
In re Detention of Tittlebach
, 324 
Ill. App. 3d
 6, 10 (2001); 
Augenstein v. Pulley
, 191 
Ill. App. 3d
 664, 681 (1989).  The critical issue is whether 
the
 expert's legal testimony aids 
the
 trier of fact by explaining a factual issue beyond 
its
  ordinary knowledge or whether 
the
 opinion merely recites a legal conclusion.  
Eychaner v. Gross
, 321 
Ill. App. 3d
 759, 779 (2001).  The admission of expert testimony is within 
the
 discretion of 
the
 trial court and will not be reversed on appeal absent an abuse of discretion
.  
In re Detention of Tittlebach
, 324 
Ill. App. 3d
 at 10.

Strauss was qualified as an accident reconstructionist, biomechanicist, and biomedical engineer.  Part of his professional experience as a biomedical engineer included 
the
 study of how humans may be injured in different types of vehicular traumas.  Strauss opined that no human could have been injured in 
the
 accident.  Strauss was also asked "whether 
the
 impact or contact between 
the
se vehicles would have been sufficient to aggravate any preexisting condition that 
the
 
plaintiff
 had in her back such as a protruding disc at 
the
 L4-5 level."  He believed that this could not have aggravated her preexisting condition because 
"this is a case where
 
the
 back is cradled and cushioned by 
the
 
seat back and 
the
 foam, and 
the
 delta V, that is, 
the
 speed of impact and 
the
 change in velocity of 
the
 [plaintiff's] van, is approximately in 
the
 range of a person walking briskly.  This is not at all a high speed impact.  This is very low."
  

We find that Strauss was improperly allowed to testify because he
 rendered an opinion as to individuals in general, which had no relevance to 
plaintiff.
  That other individuals might not suffer injuries in low-impact vehicular crashes has no bearing on whether this particular 
plaintiff
 might have suffered injury in this particular crash.  

Moreover, 
the
 trial court erred in allowing Strauss to testify that 
plaintiff
 could not have been injured in 
the
 accident.  
The admission of an expert's testimony requires 
the
 proponent to lay an adequate foundation establishing that 
the
 information upon which 
the
 expert bases his opinion is reliable.  
Hiscott v. Peters
, 324 
Ill. App. 3d
 114, 122 (2001).
  There is no indication in 
the
 record that, in rendering his opinion, Strauss considered 
plaintiff
's weight, height, and age, whether 
plaintiff
 wore a seat belt
, how she was seated, or how extensive her preexisting injuries 
were at 
the
 time of 
the
 crash.  In short, the focus of his opinion was based on generalities that were not tied to 
plaintiff
 specifically. 
Accordingly, we find that 
the
 trial court abused its discretion in allowing Strauss to testify that 
the
 low-speed impact of 
the
 crash could not have injured humans and erred in allowing Strauss to testify that 
the
 accident did not exacerbate 
plaintiff
's preaccident injury or condition.

Although we find error, we do not find that a reversal is called for in this case because 
we determine that 
the
 error here was not prejudicial under 
the
 circumstances.  We will not reverse an erroneous ruling unless 
the
 error was prejudicial or 
the
 result of 
the
 trial was materially affected.  
Stricklin v. Chapman
, 197
 
Ill. App. 
3d 385, 388 (1990)
.  The burden is on 
the
 party seeking reversal to establish prejudice.  
Cairns
, 170 
Ill. App. 3d
 at 511.

Examination of 
the
 record discloses several facts from which we determine that 
the
 error was not prejudicial and did not affect 
the
 outcome of 
the
 trial.  
Dr. Delheimer, 
the
 neurosurgeon who examined 
plaintiff
 and reviewed her medical records and films on 
defendant
's behalf, believed that 
the
 surgery performed by 
plaintiff
's treating physician had no causal relationship to 
the
 accident.  It was his belief that, prior to the accident, 
plaintiff
 had a degenerative disc disease of her lumbar spine and 
an extruded disc fragment present,
 which eventually led her to surgery
.  This belief was also based on 
the
 lack of damage to 
the
 vehicles, as shown by 
the
 photographs
.  He also believed that 
plaintiff
's obesity was a major contributing factor to her ongoing problems.  In addition
, plaintiff's surgeon, Dr. Wright, testified that when he first gave his opinion he did not know any specific details of how 
the
 accident occurred and did not know 
the
 severity of 
the
 impact between 
the
 two vehicles.  He admitted, after viewing 
the
 photographs of 
the
 vehicles taken after 
the
 accident, 
that it was very possible that 
plaintiff
's disc was not injured or aggravated as a result of 
the
 accident at issue. 

Furthermore, 
the
 jury was aware
 that, at 
the
 time of 
the
 accident, 
defendant
's vehicle rear-ended 
plaintiff
's vehicle at 
the
 speed of between five and seven miles per hour, the vehicles were not damaged, and plaintiff did not complain of any injuries at the time or for several days thereafter.  Thus, given these facts and the testimony of the other expert witnesses, the jury's verdict would not have been different if Strauss had been barred from testifying.    

2.  Evidence of Crying or Injury to Plaintiff's Son

Plaintiff next argues that the trial court erred in barring her from presenting evidence to rebut 
Strauss's opinion that no human could have been injured in 
the
 accident.  
Plaintiff asserts that "if it was error to allow Defendant's engineer to testify that no human could have been injured in 
the
 accident, 
the
 error was compounded by 
the
 court's refusal to allow Plaintiff to present rebuttal evidence on that very point."   Plaintiff alleges that her son was prepared to testify that he was injured in the accident.  

The trial court gave 
plaintiff
 
the
 opportunity to present evidence to rebut 
the
 testimony of 
defendant
's expert witness.  In submitting only her own self-serving and unqualified statements, 
plaintiff
 offered insufficient proof.  On that basis, we find no error.

P
laintiff
 also asserts that 
the
 trial court erred by barring 
her
 from presenting evidence that her son was crying or injured after 
the
 accident to show her state of mind and to explain her reason for not complaining of her own injury to 
the
 police officer at 
the
 scene of 
the
 accident.  

In her discovery deposition, 
plaintiff
 stated that, after she told 
defendant
 that she was not injured following 
the
 accident, she returned to her van and noticed that her son, who had recently undergone appendectomy surgery, was crying.  She told 
defendant
 that she was going to call 
the
 police and an ambulance for her son as a precautionary measure.  Based on this deposition testimony, defendant filed a motion 
in limine
 to bar any evidence at trial that 
plaintiff
's son was "crying, claimed to have been injured and was taken by ambulance to a hospital and evaluated or received treatment at 
the
 hospital for possible injuries or as a precautionary measure" because 
plaintiff
 had not disclosed any opinion witness who believed that 
plaintiff
's son was injured.  

At 
the
 
hearing on 
the
 motion
, plaintiff explained that she was so concerned for her son's welfare that she paid no attention to her own condition.  Plaintiff argued
 that such evidence was relevant to her case because 
it gave her a reason as to why she told 
the
 investigating police officer at 
the
 scene that she was not injured.  In her offer of proof, plaintiff testified that Cory was crying and complained that his back and neck hurt, but she did not provide any medical documentation of his injury and stated that Cory never required any medical care other than a Tylenol.

The trial court granted 
defendant
's motion, but only on 
the
 condition that 
defendant
 be barred from calling 
the
 investigating police officer to testify that 
plaintiff
 told him at 
the
 scene that she had not been injured.  The trial court based its decision on 
the
 probative value of the evidence versus 
the
 prejudicial effect it could have on 
defendant
's case.  The court also based its decision on 
the
 fact that 
plaintiff
 never disclosed any opinion witnesses or documentation that Cory had sustained any injuries as a proximate result of 
the
 accident.  The court stated, "I think that in balancing 
the
 equities and looking at 
the
 testimony and its probative value, and I was looking at it in 
the
 context that we looked at it yesterday in terms of showing [plaintiff's] state of mind and with 
the
 exclusion of 
the
 police officer being able to come in and say that she made no complaints, I think that balances 
the
 equities between 
the
 parties and allows 
the
 case to go forward in a fair fashion."

We agree with 
the
 trial court's determination.  Here, Cory made no claim of any injuries in 
the
 case.  There was no competent opinion testimony of injuries sustained or whether such injuries had any causal relationship to 
the
 accident.  Generally, t
he
 details about 
the
 nature and severity of personal injuries to nonlitigants in automobile cases are not admissible.  See 
Keil v. McCormick
, 5 
Ill. App. 3d
 523, 526 (1972); 
Vujovich v. Chicago Transit Authority
, 6 
Ill. App. 2d
 
115, 118-19 (1955) (
there is wide discretion to exclude evidence for reasons of trial expediency, as where 
the
 evidence is so remotely related that its probative value is inconsequential or leads to collateral issues).  Whether Cory sustained any injuries as a proximate result of 
the
 accident was a collateral issue upon which no discovery had been conducted.  However, 
it is clear that the
 court did find some probative value in 
the
 fact that Cory was crying after 
the
 accident, which is why 
the
 trial court granted 
the
 motion with 
the
 condition that 
defendant
 be barred from calling 
the
 police officer to testify that 
plaintiff
 denied sustaining injuries at 
the
 scene of 
the
 accident.  Under these circumstances, w
e cannot say that the
 trial court abused its discretion in barring evidence of alleged crying or injuries.  

CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court of Winnebago County.   

Affirmed. 

GROMETER, J., concurs.

JUSTICE BOWMAN, concurring in part and dissenting in part:

I respectfully dissent in part.

I disagree with the majority’s conclusion that the testimony of defendant’s accident reconstruction expert, Mark Strauss, amounts to harmless error.  The majority argues that the totality of the evidence in this matter excluding Strauss’s testimony results in a conclusion that "the jury’s verdict would not have been different if Strauss had been barred from testifying." Slip op. at 13.  I believe the majority incorrectly assumes that, in the absence of Strauss’s testimony, the outcome of the trial was certain to favor defendant. 

The central issue in dispute is whether there exists a causal connection between the aggravation of plaintiff’s injury, which required surgery, and the parties’ car accident.  In the absence of Strauss’s testimony, the evidence pertinent here consists of the testimony of two expert physicians with conflicting opinions on the central issue in controversy. 

Dr. Wright opined that, at the time of the May 6 MRI, plaintiff was not a surgical candidate.  Then, after the accident, plaintiff reported a significant worsening of her symptoms.  Upon reviewing the July 23 MRI, Wright noticed there was a dramatic worsening of the disc protrusion at the L4-L5 level.  

Wright testified that there was a causal connection between the accident and the worsening of plaintiff’s injury.  He stated:

"[S]he was doing reasonably well and holding her own up until the time of this reported car accident.  And it was only after the accident occurred that she reported the dramatic worsening of her symptomatology.  That would seem to correlate well with what we saw in terms of changes in the MRI.  And predicated on that history I would have to believe that it coincided with the accident."

Wright continued that, more likely than not, the worsening symptoms were a result of the car accident.

On cross-examination, as the majority notes, Wright stated that common sense would seem to dictate that a lower impact speed of the vehicles would correlate with a lower probability of injury occurring to the passengers.  He also stated that based on the lack of perceivable damage to the vehicles the accident appeared to be a low-speed impact.  However, Wright qualified his answer regarding the possible inferences that could be drawn from the lack of damage to the vehicle by stating that he did not know what kind of damage to expect from the accident.  In addition, on redirect examination, plaintiff’s counsel posed a hypothetical to Wright based on plaintiff’s testimony that her car moved forward one-half to a full car length when she was hit from behind.  The question asked: if plaintiff was unexpectedly thrust forward against her seat belt when the vehicle came to a rest, would that force cause the kind of trauma that was present in the July 23 MRI?  Wright responded that  such forward movement and then sudden snap back would probably be adequate to cause plaintiff’s disc to herniate.  Wright also opined that some patients who incur significant trauma may take days to experience a herniated disc.

Contrary to Wright’s testimony, Dr. Delheimer testified that he believed that there was no significant difference between the May 6 MRI and the July 23 MRI.  He opined that the condition of plaintiff’s disc protrusion at the L4-L5 level on July 23 was basically the same as it was back in May.  Based on his review of the damage to the vehicles, he found it hard to believe that the accident was a material factor in plaintiff’s need for surgery or her worsening symptoms.  However, on cross-examination, Delheimer admitted that he did not know what movement occurred with respect to plaintiff’s body at the point of impact and immediately thereafter.  

We will reverse a trial court’s ruling regarding the admissibility of an expert’s opinion when the error was prejudicial or the result of the trial was materially affected.  See 
Turner v. Williams
, 326 Ill. App. 3d 541, 553 (2001).  In 
Hiscott v. Peters
, 324 Ill. App. 3d 114, 123 (2001), we considered the testimony of an accident reconstruction expert.  There, we held that there was no concrete factual basis to support the expert’s opinion because there was insufficient physical evidence to provide him with the basic data needed to reconstruct an automobile accident.  
Hiscott
, 324 Ill. App. 3d at 124.  Thus, we held that the expert’s opinion that hypothesized how the parties’ automobile accident occurred amounted to pure speculation and could not assist the jury in understanding the evidence.  
Hiscott
, 324 Ill. App. 3d at 124.  

After we concluded that the court erred in admitting the opinion testimony of the reconstruction expert, we stated that the expert’s testimony related directly to the central controversy of the case: how the collision took place, who was at fault, and the degree of fault assigned to the defendants.  
Hiscott
, 324 Ill. App. 3d at 124.  We then stated:

"Accordingly, the admission of [the expert’s] testimony cannot be said to have had no effect on the outcome of the trial.  We believe that this error may have tipped the scales with regard to the jury’s assignment of liability between the defendants."  
Hiscott
, 324 Ill. App. 3d at 124.

Thus, we reversed and remanded the matter for a new trial.  
Hiscott
, 324 Ill. App. 3d at 124. 

I believe that 
Hiscott
 is controlling here.  In a sweeping generalization, Strauss opined that, based on research in the field of biomedical engineering, a person cannot be injured in an accident in which the impacting vehicle is traveling at five to seven miles per hour.  He further bolstered his conclusion by pointing to the "numerous studies and numerous tests" that supported it.  Moreover, when defendant’s counsel asked Strauss if the impact from the accident was "sufficient to aggravate any preexisting condition that the plaintiff had in her back," Strauss responded, "I do not believe that this can aggravate 
a preexisting condition
."  (Emphasis added.)  Then, when defendant’s counsel asked Strauss if the impact from the accident between the two vehicles here "would have been sufficient to cause any injury to the plaintiff in this case," in a similar manner Strauss responded, "there is no way the back is going to be injured in this type of accident.
"  Thus, even Strauss’s response to a specific question about plaintiff was laced with generality.

Strauss’s testimony related directly to the central controversy in this matter: whether there exists a causal connection between the aggravation of plaintiff’s injury and the accident.  The evidence on this central controversy hinged on the jury’s consideration of the conflicting opinions of two expert physicians and Strauss’s powerful, but impermissible, testimony.  The admission of Strauss’s testimony cannot be said to have had no effect on the outcome of the trial.  I believe that this error may have tipped the scales in defendant’s favor.  Thus, I cannot agree with the majority’s conclusion that in the absence of the error the outcome in this matter was certain to be the same.  Accordingly, I would remand this case for a new trial.